[L. A. No. 1850. In Bank.—October 11, 1906.]

## CITY OF LOS ANGELES, Respondent, v. A. N. DAVIDSON, Appellant.

Municipal Corporations—Street-Railroad Franchises—Construction of Act Requiring Ordinance — Mayor's Veto — Injunction by City.—The act of March 3, 1903, amending the act of March 11, 1901, so as to provide that after the sale of a municipal franchise for a street railroad, and the filing of the bond by the successful bidder, "the franchise shall by said governing or legislative body be granted by ordinance," etc., is to be construed with the free-holders' charter of a city, requiring all ordinances to be approved by the mayor, or to be passed over his veto; and where an ordinance

granting such franchise was vetoed by the mayor, and was not passed over his veto, and the money bid was tendered back, the city was entitled to enjoin the construction of the street railroad.

APPEAL from a judgment of the Superior Court of Los Angeles County. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

J. S. Chapman, and Ward Chapman, for Appellant.

W. B. Mathews, for Respondent.

McFARLAND, J.—The plaintiff is a municipal corporation, and Tenth Street is a public street lying within its boundaries. At the time of the commencement of this action the defendant was engaged in digging up part of the surface of said Tenth Street, with the intention of constructing and operating thereon a street railroad, claiming to have the franchise for the construction and operation of such railroad; and this action was brought to obtain an injunction restraining defendant from digging upon said street and from constructing or maintaining a railroad thereon. A temporary restraining order was granted as prayed for. Defendant answered, setting up fully his said asserted franchise, and praying judgment that said franchise had vested in him; that he has the right to construct and operate the railroad along said street; that plaintiff be enjoined from interfering with the construction of said railroad by defendant and from hindering him from enjoying his franchise, etc. The case was tried upon the pleadings and a stipulated statement of facts, and the court rendered judgment in favor of plaintiff, enjoining defendant as prayed for. From this judgment defendant appeals.

The main question in this case is whether defendant had a franchise to construct and operate a street railroad along Tenth Street. There is substantially no dispute about the facts; and the question here involved depends mainly on the meaning of certain legislative acts and provisions of the municipal charter of plaintiff.

On March 11, 1901, an act of the legislature was approved, entitled "An act providing for the sale of street railroad

and other franchises in municipalities," etc.    (Stats. 1901, p. 265.)    Section 1 of said act provides, among other things, that every franchise to construct or operate a street railroad upon any street or highway "hereafter proposed to be created by boards of supervisors, boards of trustees, or other governing or legislative bodies of any city and county, city or town within the state . . . shall be granted upon the conditions in this act provided, and not otherwise." Section 2 provides that an applicant for such franchise shall "file with the governing or legislative body" an application therefor, and thereupon said governing body shall "in its discretion,"—and must in case the application is accompanied with a certain petition of persons owning land along a street,—advertise the fact of said application in manner as provided.    The advertisement must state the character of the proposed franchise to be granted; that sealed bids will be received up to a day and hour named; and that the successful bidder must pay to the municipality two per cent of the gross annual receipts of the use of the franchise.    It shall further state "that the said franchise will be granted to the person, firm, or corporation who shall make the highest cash bid therefor," provided that when the bids are opened any person may raise the highest bid not less than ten per cent, and it may again be raised by others, and "said franchise or privilege shall finally be struck off, sold and granted by said governing body to the highest bidder therefor in gold coin."    It is also provided that the successful bidder shall within five days after the franchise shall have been sold and struck off to him file a certain described bond.

In accordance with the provisions of the said act of March 11, 1901, the defendant herein made an application to the city council of plaintiff for a franchise to construct and operate a railroad for a distance "along Vermont Avenue to Tenth Street and thence along Tenth Street to Western Avenue."    And on November 27, 1904, the council made an order that said franchise be sold for a period of thirty-nine years.    In advertising and conducting the sale all the provisions of said act were complied with; and on the sixth day of February, 1905, which was the day set for opening the bids, the bids were opened and defendant in-

creased his bid ten per cent and bid seven hundred dollars for the franchise; and there being no other bid the city council did on said sixth day of February accept the said sum of seven hundred dollars and did thereupon strike off, sell, and award to the defendant herein the said franchise, and defendant immediately paid said sum of money, which was accepted by the council. (This money has, however, been tendered back to defendant, and is at his disposal.) On the next day, February 7th, defendant duly executed and presented to the council the bond required by the statute, which was approved by the council, and thereupon, on said February 7th, an ordinance was passed by the council whereby said franchise was, in form, granted to defendant. This ordinance was presented to the mayor of the city, who returned it with his veto—putting his veto on the ground that certain amendments to the charter of the city which limited the term of a street railroad franchise to twenty-one years were approved by the legislature of the state on said February 7, 1905. The council did not afterwards take any action on said veto.

The charter of plaintiff provides for, among other things, a city council consisting of one councilman from each ward. It is provided in the charter that "all legislative power of the city is vested in the council, subject to the power of veto by the mayor as hereinafter given, and shall be exercised by ordinance." It is further provided that "the enacting clause of all of the ordinances shall be substantially as follows: 'The mayor and council of the city of Los Angeles ordain as follows.'" The said act of March 11, 1901, was amended by an amendatory act approved March 3, 1903, (Stats. 1903, p. 900,) so as to provide that after the filing of the bond of the successful bidder "the said franchise shall by said governing or legislative body be granted by ordinance to the person, firm, or corporation to whom it has been struck off, sold or awarded." The said amendatory act of March 5, 1903, also amends the act of 1901 in some other particulars; for instance, the word "granted" in section 5 of the act of 1901 is changed by the act of 1903 to "awarded"; the first act does not provide for the granting of the franchise by an ordinance, but seems to assume that the franchise passes by the acts of the governing body by which it is "struck off, sold,"

etc., by the governing body, and provides that if the bidder fails to file the required bond "the award of said franchise shall be set aside," while the act of 1903 provides that upon the filing and approving of the bond "the said franchise shall by said governing or legislative body be granted by ordinance to the person," etc.

The city charter provides that "Every ordinance which shall have been passed by the council before it becomes effective" shall be submitted to the mayor, with the usual provisions that the ordinance shall not be operative unless approved by the mayor, or unless upon his veto it shall be again passed by the council by a two-thirds vote.

No doubt the legislative enactments and the charter provisions above referred to are a little confusing, and leave considerable room for the forcible argument of counsel for appellant that the franchise here in question vested in appellant by the act of the city council on February 6th striking off, selling, and awarding it to appellant. But the amendments to the act of 1901 by the act of 1903 must be construed in connection with the provisions of the city charter; and so construing them we think that the latest expression of the legislative will, as expressed in the act of 1903, was that the franchise here in question should finally pass from the sovereign to the individual only by an ordinance approved by the mayor. It is true that the provision in the act of 1903 is that the ordinance by which the franchise is to be granted shall be by "the governing or legislative body" without special mention of the mayor; but the provision must be construed in view of the legislative knowledge that by the charter all "legislative power" of the council must be "exercised by ordinance"; that the form of an ordinance includes the mayor; and that no ordinance "becomes effective" until approved by the mayor, or passed over his veto. Otherwise the amendment of 1903 providing for the granting of the franchise "by ordinance" would have to be entirely disregarded.

(We have disregarded the contention of respondent that the amendments to the charter alleged to have been approved by the legislature on February 7th are conclusive against appellants, because there is no finding or evidence that said amendments were approved as early as February 7th. We have also disregarded the contention of respondents that, by

the act of the legislature approved March 27, 1897, (Stats. 1897, p. 190,) it is expressly provided that every ordinance of a municipality providing for the grant of a franchise "shall, before it takes effect, be presented to the mayor for his approval"; because it is doubtful if such provision applies to a municipality having a freeholders' charter.)

The judgment appealed from is affirmed.

Angellotti, J., Henshaw, J., Shaw, J., Lorigan, J., and Sloss, J., concurred.