GEORGIA RAILWAY & ELECTRIC CO. *v.* WALLACE & CO.

1. Evidence of compromise is excluded because inherently harmful and calculated to leave the impression on the minds of the jury that the settlement was an admission of responsibility, even though coupled with a denial of liability.
2. The rule which excludes propositions of compromise between the parties also excludes evidence of compromise between the defendant and third persons damaged in the same casualty.
3. The error in admitting incompetent evidence as to a settlement was not cured by the fact that the defendant itself offered the writing in evidence to show that it contained a denial of liability.
4. The charge as to the right to recover for the hire of the animals injured, while abstractly correct, was harmful to the defendant, in that the jury were not instructed that they could not in any event allow more for injury and loss of hire than the sound value of the horses at the time of the injury.

Argued February 1, — Decided March 27, 1905.

Action for damages.    Before Judge Reid.    City court of Atlanta.    November 28, 1903.

Wallace & Company sued the Georgia Railway and Electric Company for damages to a landau, a pair of horses, and harness.

For the plaintiffs it appeared, that the company ran two cars very rapidly along the road from East Point to Atlanta, one immediately following the other; that the first car had a headlight, and its gong was rung; that on the second car there was no headlight, and no gong was rung, and that after the first car passed, the driver of the landau turned to the right in order to let a wagon pass, and just as he got on the track, he was hit by the second car. It was claimed that he did not hear it; that the absence of the headlight and the failure to ring the gong was the cause of the driver being ignorant of its approach. For the defendant there were several witnesses who testified, that the driver was drunk; that there was no wagon approaching; that there was no necessity for turning to the right; that the car was running at the usual speed, and that the injury was occasioned by the driver suddenly turning to the right, and that when the car was so close upon the carriage it was impossible to stop. It appears, that the defendant company paid the driver $25 in settlement of any claim he might have for personal injuries received at the time of the collision. While the driver was on the stand, the plaintiff asked him if he had been settled with, and he replied that the defendant paid him $25. The defendant objected to this evidence, and the court promptly excluded it. The defendant moved for a mistrial. The motion was overruled, and the company excepted. The court instructed the jury that the compromise was no evidence of liability, and that the jury would disregard it. But the defendant insists that after such evidence had been once admitted it was impossible to remove the effect thereof from the minds of the jury. While the driver was on the stand the company laid the foundation for his impeachment, and introduced an affidavit signed by him eight days after the collision, in which he admitted that he was drunk and was reckless in his driving, and that the company was free from fault. In rebuttal, the driver denied the execution of such an affidavit, and, over the objection of the defendant that the same was irrelevant, was allowed to testify that he signed no paper in connection with the collision, except a receipt for $25, which was paid him by the defendant. To this the defendant excepted. In its charge the court instructed the jury that the receipt was only to be considered in its character as impeaching testimony. The receipt,

among other things, contained a statement that the payment of $25 is not to be construed as an admission on the part of the company of any liability whatever in consequence of such action. It was dated October 10, 1902. The affidavit admitting that the driver was drunk, that he pulled the team directly in front of the street-car, and on account of the closeness to the car the motorman could not stop before striking him, was dated October 8, 1902.

There was evidence that the landau when new cost a thousand dollars; that the plaintiffs bought it at second hand for.$200 ; that they paid $70 for one horse, and about $200 in a trade for the other; that the horses were in good shape, and were easily worth $300. The horses were hurt fifty per cent. Both horses were of about the same value before injury. For hiring they were worth from a dollar to three dollars a day, "ought to make a dollar and a half apiece a day, or a dollar, anywhere from a dollar to three dollars." The harness was worth fifty to seventy-five dollars; it was damaged fifteen to twenty per cent. after being repaired. It cost in the neighborhood of $200 to repair the landau. It was worth anywhere from five to seven hundred dollars. After being repaired it was still worth about thirty per cent. less. The petition averred that the landau was reasonably worth $800, and was rendered entirely valueless by the collision; that the harness was worth $150, and had been rendered wholly valueless; that the horses were reasonably worth $450, and were rendered entirely useless for life. Taking the evidence most favorably for the plaintiffs the damage was as follows :

| | |
|---|---|
| Fifty per cent. damage to the horses . . . . . . $150 00 |
| Loss of hire of horses . . . . . . . . . . . . 240 00 |
| Repair to landau (worth $700) . . . . . . . . . 200 00 |
| Thirty per cent. depreciation, notwithstanding repair 210 00 |
| Twenty per cent. damage to harness . . . . . . 15 00 |
| $815 00 |

Taking the evidence most unfavorably to the plaintiffs the damage was :

| | |
|---|---|
| Fifty per cent. damage to horses . . . . . . . . $150 00 |
| Loss of hire of horses . . . . . . . . . . . . 240 00 |
| Repair of carriage (worth $500) . . . . . . . . 200 00 |

| | | |
|---|---|---|
| Thirty per cent. of $500, notwithstanding repair . | 150 | 00 |
| Fifteen per cent. of $50, harness . . . . . . . | 7 | 50 |

$747 50

By an amendment the plaintiffs alleged, that both horses were rendered useless for a period of four months; that each was worth to the plaintiffs at the time of injury a dollar a day; that on account of the injuries the plaintiffs had been damaged, by the loss of their services, $240; and that they are not and will never be worth what they were worth prior to the injury, by at least one half. This amendment was demurred to on the ground that it set up an improper and illegal measure of damages, and that the evidence already offered showed that the total value of both was only $300; that they had been injured 50 per cent.; and that to be allowed to recover the damages claimed in the amendment would enable the plaintiffs to get more than the horses were worth before they were injured. The amendment was allowed, and the plaintiffs offered evidence in support thereof. Error is assigned because the court charged, "In addition to the actual injury to the property, the plaintiffs allege that during a period of four months they were engaged in an effort to cure the horses and restore them to soundness, and that during that period they actually lost a dollar a day, the total sum being $240. You will look to the evidence and ascertain what the truth is in regard to that specificatian of damages; if it is sustained by the evidence, it would be a legitimate item to be allowed in their favor." The jury found a verdict for the plaintiffs for $422.81.

*Rosser & Brandon, W. T. Colquitt,* and *B. J. Conyers,* for plaintiff in error. *Andrews & Skeen,* contra.

LAMAR, J. (After stating the foregoing facts.) It costs time, trouble, and money to defend even an unfounded claim. Parties have a right to purchase their peace. The fact that they have entered into negotiations to secure that end, and admissions or propositions made with the view to a compromise, are not admissible in evidence for or against either litigant, in the event there is a failure to adjust and a suit follows. For a much stronger reason, evidence of a settlement with a third person injured in the same casualty ought to be excluded. The court therefore

properly held that, in a suit for the recovery of damages to a carriage and horses, it was incompetent to show that the defendant had settled with the driver for any claim that he might have for personal injury received in the same collision. If such evidence was inadmissible on the direct examination, it was likewise, on the redirect, inadmissible to allow the witness to testify that he had not signed "any paper in connection with the collision, except a receipt for $25, which was paid him by the defendant." The foundation of the impeachment was the affidavit. The redirect examination should have been confined to an inquiry as to whether he signed it. The witness could have denied or explained his signature. But as the receipt itself could not have been offered against the defendant, it was doubly incompetent for the witness to state its contents, when the contents themselves were inadmissible because showing that a settlement had been made. Nor was this error cured because the defendant endeavored to meet the necessity thus improperly imposed. It offered the receipt to lessen the injurious consequences of the adverse decision by showing that it contained a statement that the company did not admit liability for the collision. It was an attempt, though necessarily an unavailing attempt, to remove from the minds of the jury the impression that the payment to the driver was a settlement of an admitted liability. Nor was the error in the admission of the evidence of the witness cured by instructing them that the evidence as to the settlement could only be considered for the purposes of impeachment. The rule against allowing evidence of compromises is founded upon recognition of the fact that such testimony is inherently harmful, for the jury will draw conclusions therefrom in spite of anything said by the parties at the time of discussing the compromise, and in spite of anything which may be said by the judge in instructing them as to the weight to be given such evidence.

The charge as to the right to recover for the loss of hire during the period the horses were idle because of the injury stated a correct principle. But as given it was harmful to the defendant. It did not instruct the jury that they could not in any event allow more for injury and loss of service than the sound value of the animals. *Atlanta Co.* v. *Hudson*, 62 *Ga.* 683 (2); *Telfair County* v. *Webb*, 119 *Ga.* 916 (2). Excluding the price orig-

inally paid, but which the jury had a right to consider (*Boker* v. *Richmond*, 105 *Ga.* 225), and taking the evidence most favorably for the plaintiff, it appeared that their sound value was $300; that after the injury they were worth $150, and therefore only $150 was recoverable for loss of hire. Yet, under the charge, the jury could have allowed $150 for damages and $240 for loss of hire. This was an error of $90 against the defendant. The verdict was for $422.81, which was less than the minimum damage to carriage, harness, and horses, proved by the plaintiff under any theory of the case. From this it must be concluded that the jury found that the driver was guilty of contributory negligence. But there was no basis for the trial judge or this court to make a calculation by which to cure the verdict by writing off the $90 in excess recoverable under the charge as given. If because of contributory negligence the jury made a deduction in other items, they may likewise have made a deduction of this item. Without passing upon the other grounds of the motion, the charge as to damages and the admission of evidence as to the settlement require the grant of a new trial; and the judgment is,

*Reversed. All the Justices concur.*