[Civ. No. 277.  Fourth Appellate District.—May 21, 1930.]

SARAH M. CURTIS et al., Respondents, v. FRANK Mc-
AULIFFE, Appellant.

Wakefield & Hansen and Bronson, Bronson & Slaven for Appellant.

M. F. McCormick for Respondents.

MARKS, J.—Respondents in this case are the heirs at law of Stephen D. Curtis, who was killed in an automobile accident in the county of Fresno, California, on the twenty-sixth day of August, 1928. Deceased at the time he met his death was operating his automobile in which T. M. Wells was riding with him. The machine came into collision with one driven by appellant. The case was tried before a jury, and a verdict was rendered in favor of respondents and against appellant in the sum of seven thousand five hundred dollars.

Appellant relies upon two grounds for a reversal of the judgment. First he maintains that prejudicial error resulted from a question asked by counsel for respondents of the witness T. M. Wells and in the argument following it. This question was whether or not Wells had been compensated for the injuries in the accident resulting in Curtis' death. To this question Wells replied that he had, and during the ensuing argument between counsel for the parties the following occurred:

"Q. Were you injured as a result of the collision?

"A. I was pretty badly skinned up. My elbow and shoulders and hips and this leg was smashed, and that knee fractured. They took seven stitches in that shin, two across my scalp, two in my ear and patches on my elbow and hips about that big around; just skinned places.

"Q. Have you been compensated for your injuries?

"A. I have.

"Mr. Hansen: Now, Judge McCormick knows that is inadmissible, that it has no bearing on the issues in this case. He knows that this man was a passenger, and he knows he can't be charged with negligence. It is a palpable piece of misconduct. He also knows Mr. Curtis is dead and can't be sued, or he would be sued, and I assign this remark as prejudicial; the grossest kind I ever heard in my life.

"Mr. McCormick: I know it is perfectly legitimate and I will state to your Honor and everyone within the hearing of my voice that it is legitimate.

"The Court: Let me hear what the remark was. (Question and answer read.)

"Mr. Hansen: I ask it be stricken out.

"Mr. McCormick: I am ready to argue that when you are through.

"The Court: Your motion is to strike that answer out?

"Mr. Hansen: Yes, and also that the jury be instructed to disregard the question of counsel and the answer of the witness.

"The Court: If you want to argue it, Judge McCormick, proceed.

"Mr. McCormick: If your Honor please, I am entitled to prove in any way that I can, an admission on the part of the defendant here of his negligence. Our whole case is based on negligence on the part of Mr. McAuliffe, and if he has said to somebody at the time of the accident, 'I am very sorry; I am terribly grieved; I realize it was my negligence,' would I be permitted to prove that statement? Why certainly. It would not so much as be argued about. There would be no question about it. Mr. Hansen would not even suggest I didn't have the right to prove admissions against interest. Now, how that admission is made, whether it is by paying somebody who was injured in the same wreck for his damage sustained by reason of personal injuries or whether it is an oral declaration or a written statement, it makes no difference, and I asked that question of this witness who was injured in that collision, to show that somebody had admitted that Mr. McAuliffe was negligent and owed Mr. Wells a sum of money as damages and I am entitled to show that.

"Mr. Hansen: Are you through?

"Mr. McCormick: I will quit when I get through, Mr. Hansen. Now if as is pleaded here, there was contributory negligence on the part of Mr. Curtis, if the defendant is able to prove that, he has a right to. He has pleaded it. He said in his answer here that Mr. Curtis was negligent and he propounded a question here in regard to whether or not the jury would follow an instruction of the court to the effect that if both drivers were negligent neither can recover, and we all know that is the law, but it is not for me to go into questions as to whether there was negligence on the part of Mr. Curtis. I am here, and the burden is upon me of proving negligence by the defendant McAuliffe, and this is one of the ways I propose to do it because this man who was injured in the same accident by the act of Mr. McAuliffe has been compensated for his injuries. Now, that is the kind of admission that is the very best of proof, there can be no question about misunderstanding a statement of that kind. It is impossible for there to be any uncertainty in this thing, and by his act, the act of compensating Mr. Wells for his injuries, I announce to your Honor that we have proved absolutely the negligence of Mr. McAuliffe. It has been proved in other ways, but we are not limited to any particular proof. I will prove it in as many ways as I see fit.

"Mr. Hansen: The policy of the law is simply this: That the law looks towards avoidance of litigation, and any offer to compromise is not admissible as an admission of liability. The law protects people who are trying to be honest with their fellow men to that extent. I submit an offer of compromise is not an admission of liability. Suppose your Honor had a dispute with someone and you said, 'Well, you might have something coming; I don't think so,' and if you offer him five dollars and then he refuses to take it, the law would not let him come into court and say, 'Judge Church is liable because he offered to settle the case.' Now, with reference to this matter right here, this man was injured by the negligence of the deceased, Mr. Curtis, more than he was by the negligence of the defendant. Judge McCormick knows well that Mr. Curtis is dead and that no recovery can be had from him. In other words, he is out of it. Now, if we choose to pay this man a small amount of money to get rid of litigation, to avoid somthing like this, it is not

admissible before a court to show we were negligent. If it was, you couldn't deal with your fellow men and you couldn't carry on business. Any offer of compromise, or a compromise is not an admission of liability, and the cases even go so far as to say, your Honor, that a judgment in a case—if this man had sued Mr. McAuliffe and had gotten a judgment and the court adjudicated we were at fault, that would not be admissible in this case, and Judge McCormick knows it. In this case, here, your Honor—

"Mr. McCormick: Speak for yourself. I will say what I know.

"Mr. Hansen: You have said more than you know. In this case, your Honor, the complaint shows that the decedent was killed on the 26th day of August, 1928, in an automobile collision. The complaint says, 'Filed September 4th, 1928,' eight days later. On the same basis your Honor, as Judge McCormick is attempting by an act on our part to avoid litigation, to get an admission in another matter. It is not the policy of the law that an offer of compromise or a compromise can even be admissible, that is not the policy of the law, otherwise we would have to adjudicate all our rights in open court. If we didn't, they would say we had been admitting something. This man sitting on the witness stand cannot be charged with contributory negligence. He wasn't driving that automobile; he was a passenger. He was on a different status than Mr. Curtis. Mr. Curtis was driving that automobile, proceeding west on Ashlan avenue, and drove onto Blackstone avenue. His claim is on an absolutely different basis. I take it your Honor will instruct the jury in this case that any contributory negligence, however slight, on the part of the decedent, Curtis, that contributed in the slightest degree to the happening of this accident would bar a recovery. In other words, if there was any negligence whatsoever, if one one-thousandth of the negligence in this case was the negligence of the decedent, it would be the duty of the jury to find in favor of this defendant. That rule does not apply to this man sitting here. It can't apply, He wasn't driving that automobile, and on that basis, and in view of the fact the policy of the law is to keep a compromise fully, and not regard it as an admission of liability that I ask at this time that the answer be stricken out, and

that the jury be admonished to disregard, if they can, the question of Judge McCormick and the answer of the witness.

"Mr. McCormick: Might I just add a word? I don't want to prolong this discussion, but Mr. Hansen has referred to the matter of compromise here, an offer of compromise as between parties litigant or parties who may become involved in a lawsuit, and of course negotiations pointing to a settlement where there is threatened litigation, or after suit has been filed, are no part of the proof of the case, and it would be altogether out of place to make inquiry touching upon things of that kind, but as I said before, that is not the case here. We had nothing to do with this man's settlement; he is no party to this litigation. Whether there was threatened litigation or not between him and Mr. McAuliffe, I know not. I have no knowledge of it, but I take it for granted that there would have been no compensation paid to Mr. Wells for his injuries if there hadn't been liability on the part of Mr. McAuliffe, and that can only arise out of the negligence of Mr. McAuliffe.

"Mr. Hansen: No; out of his desire to avoid litigation.

"Mr. McCormick: Why should Mr. McAuliffe, or anybody on his behalf make any payment to Mr. Wells in compensation of Mrs. Wells' injuries unless there was negligence on the part of Mr. McAuliffe? The answer is perfectly obvious. People are not making settlement for injuries unless there is a liability and obligation. They might make a gift out of the goodness of their hearts, and they might come and visit the widow of the deceased, or come and visit the injured man, and such acts as that would be nothing in the way of admissions at all. It would be construed in favor of, rather than against, the person who had been instrumental in a way—apart from the injuries and the death—but the whole reason for compensating Mr. Wells, was because there was an obligation and a liability, and that would only arise out of negligence on Mr. McAuliffe's part. Reference was made to when the death occurred, and when that complaint was filed. Now, if I should tell your Honor why that was done Mr. Hansen would even make more noise than he has up to the present.

"Mr. Hansen: You go ahead and tell it.

"Mr. McCormick: I will do it, because, if your Honor please, under that challenge, I have had so much experience with drivers of automobiles who carry insurance—

"Mr. Hansen (interrupting): Your Honor, at this time I will assign this remark as prejudicial misconduct. I don't know what Judge McCormick is trying to do here, today.

"Mr. McCormick: I am trying to answer your challenge. If you withdraw it, I will say nothing more.

"The Court: Gentlemen, gentlemen. It is true you challenged him and opened the gate and now you don't like the course he is taking, so we will now close the gate you opened.

"Mr. McCormick: I am willing to withdraw it.

"Mr. Hansen: Before we go a step further I assign Judge McCormick's remarks as prejudicial misconduct and an attempt to influence and prejudice the minds of this jury, and an attempt made on the part of Judge McCormick to try a case something other than in an orderly fashion, and right here I will say this, in answer to his argument that he just made that Mr. Wakefield and myself are not here for our health—

"The Court (interrupting): Judge McCormick has the floor.

"Mr. McCormick: I will not pursue that statement I intended to make because you objected to it.

"Mr. Hansen: All right.

"Mr. McCormick: I wasn't through with the statement, but I am not going on with it because of your objection. I respect your objection.

"The Court: The jurors are instructed to disregard the remarks of Judge McCormick wherein he referred to some insurance company.

"Mr. Hansen: Now, on the general ground, my first objection to strike. May I have a ruling on that, your Honor? I move to strike the answer, or the question of Judge McCormick and the answer of the witness from the record.

"The Court: Well, it seems to me, Judge McCormick, there are a couple of reasons why that should be granted. One is that the status of Mr. Wells and the status of Mr. Curtis might be entirely different in every way, shape and form. It might be in reference to this situation. If they are on different statuses, he might as well be trying to introduce evidence that he received settlement from somebody in regard to another accident. I recognize the fact it might be very different, and the motion to strike out is granted.

"Mr. McCormick: Well, I have no desire to pursue an inquiry after the court's ruling, but it is understood and conceded, is it, in this ruling, that the question as to the injury and compensation relating to this particular accident at the time that we have been speaking of—

"The Court: Oh, yes, this witness was riding with Mr. Curtis, the subject of this particular litigation, in Mr. Curtis' car, and Mr. Curtis being the driver."

■ It is contended by appellant that the question asked of the witness as to whether or not he had been compensated for his injuries received in this accident was improper, upon the ground that it tended to prove a compromise between Wells and appellant, and, therefore, was improper under the provisions of the Code of Civil Procedure prohibiting proof of compromises. He also maintained that in the argument of counsel there was prejudicial error. Respondents contend that the evidence was admissible upon the theory that it amounted to a declaration against interest by the appellant, in effect admitting his negligence in the operation of this car at the time of the accident.

It will be noted that the deceased was the driver of the car and that Wells was riding with him. Whether Wells was a passenger or a guest, or whether Wells and deceased were engaged in a joint undertaking, does not clearly appear. If Wells was a passenger or a guest an entirely different rule of liability for his injuries would arise than would apply to the deceased Curtis. We think the evidence was inadmissible under any theory of the case. ■ The argument between counsel, which we have heretofore set forth at length, should not have been permitted in the presence and hearing of the jury. Many of the statements of counsel for respondents should not have been made in the hearing of the jury and probably left an impression in their minds that would be difficult to erase by the court's striking from the record parts of these statements, as well as the question to the witness Wells and his answer that he had been compensated by appellant for his injuries in the accident.

■ The second ground for reversal relied upon by appellant refers to references made by counsel for respondents during the examination of the jurors upon their *voir dire* to the fact that appellant was indemnified by an insurance company.

In this connection the transcript shows that the following occurred:

"Mr. McCormick: Is any gentleman in the box who has been called and sworn, connected with the National Union Fire Insurance Company?

"A Prospective Juror: I am.

"Q. A stockholder?

"The Prospective Juror: No.

"Q. What capacity?

"The Prospective Juror: Business broker, or agent.

"Another Prospective Juror: I am, also.

"Q. Are any of the others in the box stockholders in this company I have mentioned, or have you any business connection with this company? Do any of you men know of any reason why you can't try this case fairly and impartially if you were sworn as jurors, and render a fair and impartial verdict as between the plaintiffs on one hand and the defendant on the other?

"A Prospective Juror: If I may make a little statement?—If the National of Pittsburg, Pennsylvania, is involved in this, I think I would be a little prejudiced in their favor, being that I represent them.

"Mr. Hansen: I can say to Judge McCormick that the National Union Fire Insurance Company has nothing to do in any way with this case.

"Mr. McCormick: What is the name of the company, then?

"Mr. Hansen: Your Honor, I assign Judge McCormick's remarks as prejudicial misconduct, trying to put something into this case that does not belong here, and I ask the court—

"Mr. McCormick (interrupting): I am perfectly willing to be corrected. I don't want to pursue this dialogue to any detriment of counsel, or whoever he may represent.

"Mr. Hansen: The defendant in this case is Mr. McAuliffe, and I am representing him.

"Mr. McCormick: I understand that perfectly. I have asked my questions and when Mr. Hansen states that the National is not involved in it in any way I am asking him to tell me who is?

"Mr. Hansen: I assign counsel's remarks as prejudicial misconduct, and an attempt to influence this jury.

"Mr. McCormick: My information is in support of the questions that I have asked. I may have been misinformed. I may be in error as to the facts upon which I base my questions.

"Mr. Hansen: Now, I assign that remark, your Honor, as prejudicial misconduct, and an attempt on the part of Judge McCormick to prejudice this jury.

"The Court: You have your record on it.

"Mr. McCormick: I wish to assure court and counsel there is no attempt on my part to mislead the jury or bring any factors into this case that are not proper evidence.

"Mr. Hansen: I don't know what you are trying to do.

"Mr. McCormick: Just to find out what I did get from Mr. Madsen.

"Mr. Hansen: At this time I ask that the jury be instructed to disregard all the remarks of counsel in regard to an insurance company as an attempt on the part of Judge McCormick—

"Mr. McCormick (interrupting): I am perfectly willing the statements of counsel, and the statements I have made to the court in that regard may be stricken out and disregarded.

"The Court: The remarks of the various counsel in regard to this subject they have just been discussing will be stricken from the record, and you are instructed to disregard it as far as you can."

The right to interrogate jurors upon their *voir dire* as to whether any of them were stockholders or interested in corporations writing indemnity insurance has been upheld by the courts in this state. (*Roche* v. *Llewellyn Iron Works,* 140 Cal. 563 [74 Pac. 147]; *Pierce* v. *United Gas & Elec. Co.,* 161 Cal. 176 [118 Pac. 700]; *Dameron* v. *Ansbro,* 39 Cal. App. 289 [178 Pac. 874, 878]; *Arnold* v. *California Portland Cement Co.,* 41 Cal. App. 420 [183 Pac. 171]; *Citti* v. *Bava,* 204 Cal. 136 [266 Pac. 954].)

In the case of *Dameron* v. *Ansbro, supra,* the court said:

"Dr. Priestly, a witness for plaintiff and appellant, testified that he was a member of the San Joaquin County Medical Association and he was asked if Dr. Dameron and Dr. Fitzgerald were members. To this question an objection was made, and in reply to the court's inquiry as to the purposes of the question, counsel for respondent stated: 'the purpose of showing whether or not the association protects

any member in litigation brought against him in a case of the present character.' It was not admissible for that purpose, as is virtually conceded by respondent. In *Pierce* v. *United Gas & Electric Co.,* 161 Cal. 188 [118 Pac. 706], the Supreme Court said: 'Evidence that a defendant in an action for damages is insured against loss by reason thereof is not admissible (*Roche* v. *Llewellyn Iron Works Co.,* 140 Cal. 563 [74 Pac. 147]), and it would undoubtedly be improper for counsel for plaintiff to endeavor to get such a fact before the jury by question designed solely for that purpose.'

"In *Shay* v. *Horr,* 78 Wash. 667 [139 Pac. 604], it was said: 'We have held in these cases, *supra,* that it is improper to either directly or indirectly get before the jury any fact which conveys the information that the defendant is insured against loss in case of a recovery against it, and that the striking of the answers conveying such information and the instructing of the jury not to consider it will *not save the error.*'

"It is altogether probable that the jury would be more inclined to find a verdict against appellant if it were believed that he was indemnified than if it were understood that he was to bear the burden alone.

"Granting that the question was proper to show the interest or bias of the witness, the statement of counsel was likely to be prejudicial and the court should, at least, have permitted appellant to show as a matter of fact that no such indemnity really existed. It has been held that even in examining jurors such questions are highly improper. (*Pierce* v. *United Gas & Electric Co., supra.*)" (Italics the court's.)

We have in mind the rule laid down in the cases of *Cozad* v. *Raisch Improvement Co.,* 175 Cal. 619 [166 Pac. 1000]; *Nichols* v. *Nelson,* 80 Cal. App. 590 [252 Pac. 739]; *Williamson* v. *Hardy,* 47 Cal. App. 377 [190 Pac. 646]; *Baldarachi* v. *Leach,* 44 Cal. App. 603 [186 Pac. 1060]; *Arnold* v. *California Portland Cement Co.,* 41 Cal. App. 420 [183 Pac. 171], and other cases which permit interrogation of the jurors on their *voir dire* as to whether or not they were stockholders in or interested in an indemnity insurance company. We believe that counsel for respondents went far beyond the rule announced in these cases in his interrogation

of the respective jurors, and in his argument to the court. The rule established in these cases goes far enough, and we cannot approve any extension of it. We believe that the questions propounded to the jurors and the arguments which we have quoted constitute prejudicial error which will require a reversal of the case.

The judgment appealed from is reversed.

Barnard, Acting P. J., and Owen, J., *pro tem.*, concurred.