[S. F. No. 14589. In Bank.—October 31, 1933.]

JOHN E. HAMILTON, Appellant, v. OAKLAND SCHOOL DISTRICT OF ALAMEDA COUNTY (a Corporation) et al., Respondents.

Robert L. McWilliams and Shelton, Gray & McWilliams for Appellant.

Earl Warren, District Attorney, Ralph E'. Hoyt, Chief Assistant District Attorney, and James H. Oakley, Deputy District Attorney, for Respondents.

THE COURT.—Plaintiff brought this action for the purpose of enforcing a compromise alleged to have been entered into by plaintiff with defendant school district. The trial court found the compromise was unsupported by consideration and therefore unenforceable against defendants. From the judgment based on this finding this appeal has been taken.

The facts giving rise to the controversy are not substantially in dispute, and are as follows:

In November, 1928, plaintiff as general contractor, and defendants by and through the Board of Education of the City of Oakland, entered into a contract for the construction of a school building to be known as the Allendale-Fruitvale school in said city. The contract provided that the building should be completed on or before July 31, 1929, and time was expressly made of the essence of this provision. The contract further provided:

"Should the contractor fail to complete his contract and the works provided for herein within the time fixed for such completion as stated above, due allowance being made for unavoidable delays, he shall become liable to the Board in the amount of Fifty ($50.00) Dollars per calendar day for each day said work remains uncompleted beyond the term for completion. . . . If it appears to any contractor that he will not complete the work provided in his contract in the time agreed, he shall make written application to the Board at least thirty (30) calendar days prior to the expiration of the time for completion, stating the reasons why and the amount of extension which he believes should be granted. The Board may then in its discretion grant or deny such extension."

The building was not completed until December 3, 1929, 124 days after the time specified in the contract for its completion. The amount still due and owing plaintiff at that time was about $48,000. After the building had been formally accepted by defendants, the board directed the auditor to draw a warrant in favor of the plaintiff for the remainder

of the contract price less the sum of $6,200, that amount being claimed by the board as liquidated damages for the full 124 days at $50 per day as provided in the contract. In the meantime subcontractors and materialmen of the plaintiff had filed stop notices against the amount still owing to plaintiff. The evidence shows that if the full $6,200 claimed by defendants were withheld, there would not then have been a sufficient sum remaining owing to plaintiff to pay all the subcontractors and materialmen. The plaintiff objected to the deduction of the full $6,200. To adjust the matter hearings were had before the board on February 25 and March 4, 1930. At these hearings the plaintiff was present with his then counsel, Mr. Beardsley, and the matter was discussed at some length. Mr. Beardsley finally offered to compromise the $6,200 disputed claim of the board for $2,000. At the conclusion of the hearings the board accepted the offer and adopted the following resolution:

"Upon motion of Director Sturgis, seconded by Director Kornhaus, the following report and recommendation of the committee of the whole was approved. . . .

"That the amount of liquidated damages to be exacted of the Hamilton Construction Co. on account of the delay in the completion of the Bret-Harte (Allendale-Fruitvale) school as stated in the minutes of December 5, 1929, be changed from $6,200 to $2,000.

"This action was taken after a conference with Mr. Charles A. Beardsley, attorney representing the Hamilton Construction Co., the contractor agreeing that if the board reduced the amount of liquidated damages to $2000, he would secure releases of withhold notices filed against his contract, and file with the Board of Education bonds in the amount of 125 per cent of the withholds for all disputed claims, in order that the balance due on the contract may be released for distribution to the subcontractors."

Before a warrant drawn pursuant to the foregoing resolution was delivered to the plaintiff the board was advised by the district attorney that in his opinion the liquidated damage clause of the contract was valid and could not be waived by the board; that "if an actual dispute exists between your board and the contractor as to the number of days in which the latter was in default, your board may compromise such dispute, and may adjust its claim for such damages upon

that basis only''. The district attorney further advised the board that the provision on the part of the contractor to pay the subcontractors and other claimants and to bond against certain claims referred to in the resolution could not form the basis of a valid compromise, for the reason that the contractor was already bound to perform these acts, in any event.

Following the receipt of this advice the board immediately by resolution rescinded its action of March 4th approving the offer· of compromise. A warrant for the balance of the contract price less $6,200, the full amount claimed, was issued to and accepted by plaintiff, subject to his right to prosecute his claim for the additional $4,200, according to the terms of the compromise. A claim for this amount was presented to the board and rejected, whereupon this action was brought, resulting in a judgment for the defendants.

In reference to the compromise the trial court found that plaintiff, before the date of the alleged compromise, disputed the right of defendants to retain $6,200, and claimed that out of the 124 days' delay, 23 days of delay were due to causes beyond plaintiff's control; that plaintiff requested an extension of time for the 23 days, which request was denied; that thereupon plaintiff ''offered to compromise all differences between the parties arising out of the contract upon payment to him of $4,200 of the total amount of $6,200 withheld by defendants as aforesaid and urged his inability to pay his subcontractors and materialmen *as the chief reason* for reaching an agreement''; that defendants agreed to the compromise ''solely by reason of a desire upon their part that said subcontractors and materialmen be paid''; that it is not true that the resolution of March 4th accepting the compromise ''was predicated upon the respective claims and contentions made by the parties at the board meeting of March 4, 1930, and in order to avoid litigation, but it is true that defendants entered into said compromise agreement in the belief that they were thereby making funds available to plaintiff to pay said subcontractors and materialmen, and that their action as taken would result in such payment; that defendants expressly rejected all other reasons advanced for reaching said compromise agreement, and that there was no other consideration therefor; that said compromise, by reason of the facts herein determined, was wholly without

consideration and beyond the power of said defendants to consummate, and therefore was invalid and of no force or effect and did not constitute a valid obligation''.

From this finding the trial court concluded that there was no valid basis for the compromise, and that the agreement to compromise was not a binding obligation of the board.

■ We are of the opinion that the judgment should be reversed for the reason that the uncontradicted evidence shows that plaintiff prior to March 4th was disputing the validity of defendants' claim; that prior to the completion date plaintiff asked for a 23-day extension for delays caused by adverse weather conditions, and that a portion of that claim was good; that plaintiff also claimed that a large portion of the delay prior and subsequent to the completion date was caused by the agents of defendants in failing to cooperate and give requested instructions. It is our opinion that the compromise of such a claim, whatever might have been the motives or reasons of the board in agreeing to it, constitutes a valid compromise enforceable against the board.

■ In support of the judgment defendants first contend that the board was entirely without power to compromise any claim against the district. This point is without merit. The broad powers conferred on the board by article XXIII of the city charter (Stats. 1911, p. 1647), places that board in the category of those public bodies invested with the necessarily implied power to compromise claims against it. That such a board has, under the general law, such implied power was decided in *Smith* v. *Cloud*, 28 Cal. App. 453 [152 Pac. 950], and so far as we are advised, the rule there laid down has not been successfully challenged. (See, also, 5 Cal. Jur. 394, sec. 9.)

The main contention of defendants is that since the evidence shows that the main reason the board agreed to the compromise was to secure a promise from plaintiff that he would then pay all subcontractors, and since the contractor was already legally bound to pay these subcontractors, plaintiff has supplied no consideration for the agreement. There can be no doubt, of course, that if the consideration for the compromise agreement was solely the promise of the contractor to pay his subcontractors and materialmen the agreement would be lacking in consideration, for the reason that plaintiff was liable in any event to pay those claims and

the district was in no way bound to pay them. In other words, if the sole consideration furnished by the contractor was his promise to pay the subcontractors he would only be promising to do that which he was already legally bound to do, and that never can constitute consideration for a promise. But the uncontradicted evidence shows that this promise was not the only consideration furnished by the contractor. The plaintiff testified, and his testimony is uncontradicted, that he disputed the number of days' delay chargeable to him; that at the meeting of March 4th, Mr. Beardsley went into some detail in explaining to the board the rather hopeless situation as far as ever agreeing as to the number of days; that plaintiff contended that many of the delays were caused by reasons beyond his control; that a large portion of the delay was caused by the board itself in not giving him instructions or orders. Mr. Beardsley testified, and his testimony is not contradicted, that he had several conversations with members of the board prior to the meetings of February 25th and March 4th, regarding the $6,200 claim; that he told the board at the meeting that he did not dispute the validity of the liquidated damage clause in the contract; that he had been authorized to offer to settle the claim for $2,000; that he told the board that "my basis for suggesting that compromise was that there was a dispute existing between the contractor and the board in reference to that particular sum of money, not as to the rate per day, but *as to the responsibility of the contractor for the 124 days delay.* I stated that . . . Mr. Hamilton claimed that that delay was due in part to weather conditions and in part to the fault of the owner, as represented primarily by the Building Inspector, and we [had] made certain complaints to him in reference to rulings and actions of the Building Inspector that we did not desire, unless it was necessary, to have thrashed out in court, and because of that dispute, and for the purpose particularly of securing the payment of these large number of claimants [subcontractors] . . . we were willing to compromise. . . . There was a considerable discussion, we were in session approximately two hours on the second occasion and a little less on the first occasion." From the incomplete minutes of the meetings it clearly appears that several members of the board were well aware that plaintiff had had several disputes with representatives of the board. Moreover, the answer of defendants alleges

that "plaintiff was actually in default for 124 days and the only dispute between said parties was as to whether plaintiff was responsible for all of said days". As to the attitude of the board, at the meeting on March 4th, one member of the board stated: "It is my idea to take the compromise; otherwise these people will go into court. I think it is the businesslike thing to do, regardless of the fact that we had more actual damages." Another member of the board stated: "I do not see how it will help this board to go into court. I think the best thing to do is to settle it now. . . . Why keep this thing up for six months or more? If we do we will have a lawsuit on our hands." Another member of the board stated that he would be willing to compromise for $4,000. One member's concluding view of the question was expressed by him as follows: "I would vote for $2000. If we can stand our ground, deducting $6,000 this thing will never be settled."

No useful purpose would be served in further reviewing the facts. It may be admitted that when the board finally accepted the offer of compromise they did so with the desire of securing the payment of the subcontractors. The situation presented, therefore, is one where the plaintiff was disputing the validity of a claim against him on many grounds and threatening suit. The defendants then accepted an offer of compromise, their reason for doing so being a desire to assist subcontractors. Does this constitute a valid compromise? We think it does. ■ It must be remembered that it is the policy of the law to discourage litigation and to favor compromises of doubtful rights and controversies, made either in or out of court. (*Armstrong* v. *Sacramento Valley Realty Co.*, 179 Cal. 648 [178 Pac. 516]; *Union Collection Co.* v. *Buckman*, 150 Cal. 159 [88 Pac. 42, 119 Am. St. Rep. 164, 11 Ann. Cas. 609, 9 L. R. A. (N. S.) 568].) ■ It is not essential to a valid compromise that the claim in dispute be determined to be a valid one. As long as the claimant is asserting the claim in good faith, a compromise thereof is valid even though it later develops that the claim was not well founded. As was said in *Union Collection Co.* v. *Buckman, supra*, at p. 163:

" . . . the compromise of a doubtful claim asserted and maintained in good faith constitutes a sufficient consideration for a new promise, even though it may ultimately be

proved that the claimant could not have prevailed. This is true whether the claim be in suit or not. . . . '' (See, also, *Bennett* v. *Bennett, ante,* p. 153 [25 Pac. (2d) 426] ; *First Nat. Bank* v. *Thompson,* 212 Cal. 388, 405 [298 Pac. 808] ; 5 Cal. Jur. 391; 6 Cal. Jur. 176.) The good faith of plaintiff challenging the amount of the claim was not attacked. ▮ The contention that the contract provided the exclusive method of securing an extension and that therefore lack of good faith on plaintiff's part is shown in urging reasons for delay not set forth in the manner provided by the contract, is not sustainable. The contract provision only applied to delays prior to completion. The plaintiff was not foreclosed by failure properly to apply for an extension prior to July 1st, from contending that delays occurring subsequent to July 31st were due at least in part to defendants and to other circumstances beyond his control.

It is therefore our opinion that there was a valid consideration for the compromise. The mere fact that the motive of the board in agreeing to the compromise was a desire to see that the subcontractors were paid is immaterial. Motive and consideration are not the same thing. ▮ Where a valid consideration for a contract exists the motive that inspires the acceptance of the offer is of no importance. (1 Williston on Contracts, sec. 111, p. 230.) The fact is that plaintiff was threatening suit on the claim and contending that he was not responsible for the delay. Under such circumstances the board saw fit to settle the dispute. What reasons the members of the board may have had, or what they may have said on the subject, is of no consequence. (*Agnew* v. *Brall,* 124 Ill. 312 [16 N. E. 230, 232].)

The judgment appealed from is reversed.

Rehearing denied.