[Civ. No. 22674.   Second Dist., Div. Three.   Oct. 20, 1958.]

JEANNE PRICE, Appellant, v. ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Respondent.

Robertson, Harney, Drummond & Dorsey and David M. Harney for Appellant.

Robert W. Walker and Richard K. Knowlton for Respondent.

PATROSSO, J. pro tem.*—Plaintiff instituted this action to recover damages for personal injuries alleged to have been sustained as a result of the derailment of defendant's train upon which she was riding as a passenger. The accident occurred on August 22, 1954, near the town of Lomax in the State of Illinois, some 219 miles west of the city of Chicago, where plaintiff had boarded the train for a journey to Los Angeles. Trial was had before a jury which returned a verdict in favor of the defendant and plaintiff appeals from the judgment entered thereon.

At the opening of the trial, plaintiff sought to secure a ruling by the trial court restricting the trial to the issue of damages. In support of this motion appellant offered in evidence the files of two previous actions instituted in the Superior Court of Los Angeles County by other passengers who sustained injuries in the same accident, and in each of which actions judgment was rendered in favor of the plaintiffs therein and against the defendant, and which judgments had become final. Objections to appellant's motion and the offer in evidence of the record of the prior proceedings, were sustained by the trial court and these rulings are the principal ground of appellant's claim of error upon this appeal.

Appellant contends that the judgments in the two prior actions previously mentioned, are res judicata upon the issue of defendant's negligence within the doctrine announced in *Bernhard v. Bank of America* (1942), 19 Cal.2d 807 [122 P.2d

---

*Assigned by Chairman of Judicial Council.

892], and that the trial court erred in refusing to permit proof of such prior judgments. This identical contention was advanced by the plaintiff in *Nevarov* v. *Caldwell*, 161 Cal.App. 2d 762 [327 P.2d 111] (hearing by Supreme Court denied), and after careful consideration was decided adversely to the appellant by Division Two of this court, in an opinion authored by Mr. Justice Ashburn. As we are in accord with both the conclusion there reached and the reasons assigned in support thereof, we see no need to elaborate thereon. The rulings here complained of were therefore proper.

Appellant also complains that she was precluded from proving that in one of the prior cases above adverted to (*Meredith* v. *Atchison, Topeka & Santa Fe Ry. Co.*) the defendant herein stipulated to judgment in favor of the plaintiff and in the other (*Longworth* v. *Atchison, Topeka & Santa Fe Ry. Co.*), defendant admitted liability. The argument is that the proffered proof would have established an admission by the defendant that the derailment was occasioned by defendant's negligence. With respect to the Longworth case, the file thereof which was offered in evidence failed to disclose that defendant admitted liability, and counsel for the defendant herein denied that any such admission had been made. In response, counsel for the appellant stated that he had been informed by Mr. Murphy, counsel for the plaintiff in the Longworth case, that such an admission had been made and indicated that he intended to call Mr. Murphy as a witness to establish this fact. Counsel for the respondent thereupon stated that appellant's attorney was of course at liberty to do so, but Mr. Murphy was not called as a witness and no further proof was offered in this connection. With reference to the Meredith case, however, the judgment entered therein discloses that after the case had been on trial for 11 successive court days on both the issues of liability and damages, "defendant The Atchison, Topeka and Santa Fe Railway Company denying liability," and while the jury was deliberating upon the verdict the parties entered into a stipulation for a settlement of the cause and for entry of judgment in favor of the plaintiff, Mrs. Meredith, and against the defendant in the sum of $110,000 subject to the approval of the probate court[1] and in favor of the plaintiff, Mr. Meredith, in the sum of $15,000.

---

[1]Approval of the probate court was required due to the fact that Mrs. Meredith appeared in the action by a guardian *ad litem.*

■ Thus the question presented is whether the fact that the defendant in an action by a third party who was also injured in the same accident as that which constituted the basis of the plaintiff's claim made a settlement thereof, may be given in evidence as constituting an admission that the accident in question was caused by the defendant's negligence. The answer to this question is to be found in *Brown* v. *Pacific Electric Ry. Co.* (1947), 79 Cal.App.2d 613 [180 P.2d 424], in which a hearing by the Supreme Court was denied. There plaintiff was permitted, over objection, to introduce evidence to the effect that the defendant railway company had made a settlement with another party who had sustained damage as a result of the same accident in which plaintiff was injured, upon the theory that this constituted an admission against interest. In holding the trial court's ruling to be error and in reversing a judgment for plaintiff, the court after an elaborate review of the authorities said (p. 615) :

"While it is the policy of the law to discourage litigation and to encourage compromise of doubtful rights and controversies (*Hamilton* v. *Oakland School Dist.*, 219 Cal. 322, 329 [26 P.2d 296]), appellee contends in effect that proof of a settlement of the controversy made by the defendant in an action with a third party who was injured in the same accident as that which constitutes the basis of plaintiff's claim is not inhibited by section 2078, Code of Civil Procedure. That statute declares that 'an offer of compromise is not an admission that anything is due.' While it refers to offers only, yet the doctrine that a plaintiff may prove that the defendant has satisfied the demands of a third party who was a victim of the same tort as that alleged by plaintiff is so tenuous and rests upon such precarious support that it should not be extended without legislative enactment. The general rule is to reject such evidence as irrelevant and incompetent.

"Evidence of a compromise settlement by the defendant of a claim which originated in the very tort alleged by the plaintiff is inherently harmful in the trial of an action for personal injuries. It invades the province of reason in the exercise of its function to ascertain the truth as to whether the alleged tort feasor has committed actionable negligence or has failed to perform an act which in the exercise of reasonable care he should have performed, to the detriment of the claimant. Where the culpability of a defendant in an action based upon his alleged negligence is in issue it should be the aim of the court to endeavor to derive a determination

of factual liability by competent proof of the circumstances and occurrences constituting the transaction alleged, and it should not be guided by compromise settlements which the defendant has made of other claims arising out of the same facts. In such a trial there is no proper alternative to the art of presenting only competent evidence and of making sound deductions and drawing reasonable inferences therefrom. When the fact finders enter upon their task poisoned with the recital of some irrelevant event that transpired subsequent to the alleged negligent act they are under a handicap which is not only difficult to disregard but which cannot be eliminated because it has the obvious approval of the judge whose views juries are prone to follow in determining facts if an opportunity is presented for them to ascertain the judicial trend. Moreover, the extrajudicial admission of a party not learned in the law that he is liable amounts to no more than a legal opinion at its best. A fully blown legal opinion asserted by an agent of the alleged tort feasor outside of court would not be admissible as competent evidence.

"Proof of the settlement made by the corporation with Champion contains no evidence of the admission of the corporation's negligence. It shows no more than the diligence of appellant to buy its peace with the party whose claim was modest and whose automobile had actually been struck by the train. The bare statement that Champion had been compensated for his losses falls far short of an admission of a fact showing the motorman's actionable negligence. It appears to be the prevalent rule in California and in the other states of the Union that in actions for personal injuries arising out of negligence evidence of a settlement with another claimant for injuries caused by the same tort alleged by plaintiff, not connected up with any act admitted by the defendant and which shows his liability for the accident, is clearly irrelevant and therefore inadmissible. (*Citti* v. *Bava,* 204 Cal. 136, 138 [266 P. 954] ; *Curtis* v. *McAuliffe,* 106 Cal. App. 1 [288 P. 675] ; *Georgia Ry. & Electric Co.* v. *Wallace & Co.,* 122 Ga. 547 [50 S.E. 478, 480] ; *Smith* v. *Sanders,* 293 Ky. 6 [168 S.W.2d 359] ; *Moore* v. *Stetson Machine Works,* 110 Wash. 649 [188 P. 769] ; *Quiel* v. *Wilson* (Ohio App.), 34 N.E. 2d 590.) It is contrary to public policy to subject a person who has compromised a claim to the hazard of having his settlement proved in a subsequent lawsuit by another person asserting a cause of action arising out of the same

transaction. To receive such evidence would inevitably tend to discourage settlements out of court if one's purchase of his peace with one person were to be thereafter taken as an admission of his liability for an occurrence which brought injury to another. Reasonable and compelling circumstances might very well influence the defendant to make settlement with the third person while denying all liability to the plaintiff. No party to a justiciable controversy should be discouraged from amicably adjusting his claim by the fear that he might subsequently be confronted with the contention that his concession there was an admission of liability. The rule protecting compromises is too salutary to be whittled away. (Citations).''

While in the cited case the settlement relied upon as constituting an admission was seemingly made before suit was filed, we see no difference in principle between such a situation and that where the settlement is effected after suit and during the trial thereof.

Appellant next contends that the trial court erred in denying her motion for a directed verdict upon the ground that the defendant failed as a matter of law to overcome the inference arising from the application of the doctrine of res ipsa loquitur. There is no doubt that the doctrine was applicable and the trial court instructed the jury with respect thereto. Appellant's argument in this regard, however, seemingly proceeds upon the assumption that the doctrine of res ipsa loquitur operates to place upon the defendant the burden of overcoming the inference of negligence arising thereunder by a preponderance of the evidence. This, of course, is not true. The trial court, at the request of the appellant, gave the jury BAJI instructions 206 and 206D. By the latter they were told:

''In making such a showing, it is not necessary for a defendant to overcome the inference by preponderance of the evidence. Plaintiff's burden of proving negligence and proximate cause by a preponderance of the evidence is not changed by the rule just mentioned. It follows, therefore, that in order to hold the defendant liable, the inference of negligence and proximate cause, either alone or with such other evidence, if any, as favors it, must have greater weight, more convincing force in the mind of the jury, than the opposing explanation offered by the defendant and any evidence, if any, supporting it.

''If such preponderance in plaintiff's favor exists, then you must find that some negligent conduct on the part of defendant

was the proximate cause of the injury; but if the evidence preponderates in defendant's favor, or if in the jury's mind an even balance exists as between the weight of the inference and such evidence, if any, as favors it, on the one side, and the weight of the contrary explanation and such evidence, if any, as favors it, on the other side, neither having the more convincing force, then the verdict must be for the defendant.

"As applied to a common carrier such as the defendant, the word 'negligence' wherever used in the instructions just given, means any breach of duty toward the passenger, evidence of which has been received in this trial. That duty is defined elsewhere in my instructions to you."

This is a correct statement of the rule, both generally and specifically as applied to an action against a carrier for injuries sustained by a passenger. (*Armstrong* v. *Pacific Greyhound Lines* (1946), 74 Cal.App.2d 367, 371-373 [168 P.2d 457].)

In *Bourguignon* v. *Peninsular Ry. Co.* (1919), 40 Cal.App. 689 [181 P. 669], the Supreme Court, in denying a petition for hearing said (p. 694):

"The petition for rehearing is denied. Such denial, however, is not to be taken as a complete approval of the instruction that the defendant must show 'that the overturning of the car was the result of inevitable casualty which human foresight and care could not prevent, for the law holds it responsible for the slightest negligence, and will not hold it blameless except upon the most satisfactory *proofs.*'

"The true rule is that where the accident is of such a character that it speaks for itself, as it did in this case, and raises a presumption of negligence, the defendant will not be held blameless except upon a showing either (1) of a satisfactory explanation of the accident, that is, an affirmative showing of a definite cause for the accident in which cause no element of negligence on the part of the defendant inheres, or (2) of such care in all possible respects as necessarily to lead to the conclusion that the accident could not have happened from want of care, but must have been due to some unpreventable cause, although the exact cause is unknown.

"In the latter case, inasmuch as the process of reasoning is one of exclusion, the care shown must be satisfactory in the sense that it covers all causes which due care on the part of the defendant might have prevented. In the case of an accident to a passenger in the course of transportation by a railway company, the explanation or care shown, as the case

may be, must be most satisfactory in the sense that the carrier is held to a very high degree of care.

"But the proof which is required of such explanation or care is a different matter from the explanation or care itself. The explanation or the care shown, if true, may be perfectly satisfactory. The proof of its truth may or may not be satisfactory. On this point the rule is the same as in the case of any other presumption which a defendant must meet, that is, he is not obliged to overcome the presumption by a preponderance of evidence, but it is sufficient for him to give such proof of the truth of his explanation or of his contention that he exercised due care in all particulars as to offset the presumption in the minds of the jury and produce a balance in their minds on the question of its truth. Throughout the plaintiff must prove his case by a preponderance of evidence. (See *Haun* v. *Tally, ante* [40 Cal.App. 585 (181 P. 81)].)"

And in *James* v. *American Buslines,* 111 Cal.App.2d 273, 276 [244 P.2d 503], it is said:

"In an action for personal injuries sustained by plaintiff while a passenger in defendant's bus, it is the sole province of the jury to determine from all the evidence whether plaintiff's prima facie case arising from the application of the doctrine of res ipsa loquitur is adequately met or balanced by defendant's showing of the conduct of the driver and the circumstances of the accident. (*Armstrong* v. *Pacific Greyhound Lines,* 74 Cal.App.2d 367, 375 [8] [168 P.2d 457].)"

As said in *Walters* v. *Bank of America,* 9 Cal.2d 46, 49 [69 P.2d 839]:

"Substantially the same rules apply to directed verdicts in favor of plaintiffs as apply to such verdicts in favor of defendants. (*Bias* v. *Reed,* 169 Cal. 33 [145 P. 516]; 24 Cal. Jur. p. 913, § 163.)  A directed verdict may be granted, when, disregarding conflicting evidence, and indulging every legitimate inference which may be drawn from the evidence in favor of the party against whom the verdict is directed, it can be said that there is no evidence of sufficient substantiality to support a verdict in favor of such party, if such a verdict has been rendered."

Viewed in accordance with the rule last above stated, evidence was adduced by the defendant from which the jury could reasonably conclude that the derailment of defendant's train occurred as a result of the breaking of an equalizer on the south side of the rear truck of the car in which plaintiff was riding and which was the second car of the train. After

the accident it was discovered that the equalizer, a curved steel bar resting at each end on the axle and journal box, Exhibit "C," had broken near the foot resting on the journal box and had dropped until the bottom thereof reached a point lower than the surface of the south rail of the westbound track. The point at which the break occurred, because of the truck pedestal, was not visible to inspection. Evidence was adduced to the effect that this car had been completely overhauled in January and February of 1954, some six months prior to the derailment. Included in this overhaul was a complete tearing down and inspection of the truck assemblies including an electrical magnifluxing of the parts thereof and as a result of which no defects were found in the equalizers on the trucks of the car in question. Magnifluxing is described as a process designed to determine the presence of a fracture in metal. The object being inspected is passed through an electrical current which magnetizes the object and thereupon a powder flux is sprinkled upon the surface. If a crack or break of any kind is present, the powder follows the crack and fixes it, thus indicating its presence. It further appears that the car in question arrived in Chicago on August 20th, two days prior to the run on which the derailment occurred. It was then taken to the defendant's coach yard where it was entirely inspected and the inspection revealed no defects. The car then remained in the coach yard until the morning of August 22nd, when it was taken to the Dearborn Street station and again inspected. Enroute west of Chicago running inspections of the train's running gear were made by the train crew and nothing out of the ordinary was noted by the train crew up to the time of the derailment. The first indication to the train crew of the derailment came when the emergency braking apparatus of the train went into effect automatically and the train came to a stop some three-quarters of a mile west of the Lomax station.

In the light of this evidence, we are unable to say that, as a matter of law, the jury was not warranted in determining that the inference of negligence arising from the application of the doctrine of res ipsa loquitur was not met or at least balanced. In its factual aspect, the case at bar is somewhat similar to that of *Allbritton* v. *Interstate Transit Lines* (1939), 31 Cal.App.2d 149 [87 P.2d 704], in which a hearing by the Supreme Court was denied. There, the plaintiff, a passenger upon defendant's bus, was injured when it overturned. To meet the prima facie case of negligence made by

the showing of the accident, the defendant introduced evidence to the effect that the bus involved in the accident was regularly inspected and repaired, including daily inspection of its under parts, and that one or two days before the accident the defendant's mechanic had made a front-end inspection of the bus consisting of cleaning the front wheels, spindles, front wheel bearings and front steering mechanism as well as the tie rod and springs. After such cleaning process, a solution of chalk and alcohol was applied to these parts in order to show up cracks or flaws, if any. In this operation the mechanic looked at the left front spring but did not discern any defect in the metal of which the spring was composed. On the day following the accident this mechanic made another inspection of the wrecked bus, particularly with reference to the left front spring and he found the spring broken and the front brake cable torn loose from the wheel housing. He further testified that "the break showed approximately fifty per cent old break and fifty per cent new break." The trial court there instructed the jury upon the doctrine of res ipsa loquitur, stating that in order to overcome the inference of negligence, the defendant carrier was required to prove, by a preponderance of the evidence, that the injury was occasioned by an unavoidable casualty or some other cause which human care and foresight could not prevent. Upon appeal, it was held that this instruction was erroneous insofar as it stated that the burden rested upon the defendant to overcome the inference by a preponderance of evidence. The respondent claimed, however, "that the appellant was not prejudiced by the court's failure to instruct the jury that the burden of proof as to the main issue of negligence remained with the plaintiff throughout the trial, for the reason that under the evidence the jury was bound to find against defendant." The court, however, held (p. 156) that this claim could not be upheld "because there was in the record a substantial conflict in the evidence upon the issue of whether the accident was caused by, or resulted from, such inevitable casualty or unavoidable accident, or cause beyond human care or foresight to prevent. We cannot say as a matter of law that the instructions here under attack were not prejudicial to the defendant."

What has been said answers the last part of appellant's contention that respondent failed to explain how the derailment occurred or that the derailment occurred without negligence upon its part. While it is true, as appellant states,

that no expert testimony was adduced as to the cause of the derailment, as heretofore stated, facts were established from which the jury was entitled to infer that it occurred as a result of the breaking of the equalizer and that any defect that may have existed in the equalizer was not discoverable despite a careful inspection thereof immediately prior to the time that the accident occurred.

Appellant further contends that the trial court erred in denying her motion to strike respondent's evidence as to the care exercised by it in the inspection and maintenance of its cars and equipment. This contention is based upon Civil Code, section 2101, which reads as follows: "A carrier of persons for reward is bound to provide vehicles safe and fit for the purposes to which they are put, and is not excused for default in this respect by any degree of care."

The argument is that, inasmuch as the evidence was such that it would have justified a finding "that the derailment was the result of respondent's failure to provide vehicles safe and fit for the purposes to which they are put" defendant was not excused for default in that respect by any degree of care. In effect the claim is that this section operates to make a carrier an absolute insurer of its passengers, at least for injuries occurring as a result of its failure to provide vehicles safe and fit for the purposes to which they are put. While respondent disputes that such is the effect of the statutory provision in question, we find it unnecessary to consider the question thus posed.

As previously noted, appellant became a passenger of the respondent in Illinois and the accident in question occurred in that state. In such situation "the law which governs the degree of care required and the liability of a carrier for its negligence in injuring a passenger is the law of the place where the injury occurred." (13 C.J.S. p. 1263, § 679.) Appellant has not referred us to any statute of Illinois similar or of like import to section 2101, and our own research has failed to reveal any such. Neither do we find that such a rule has been adopted by the courts of that jurisdiction. The degree of care required by a carrier for the safety of its passengers as declared by the Supreme Court of Illinois is as follows: "Carriers are not insurers of the safety of their passengers. The degree of care to be exercised under circumstances of this character is well defined in the case of *North Chicago Street R. R. Co.* v. *Cook,* 145 Ill. 551 [33 N.E. 958]. In that case this court said: 'Carriers of passengers are held

to the exercise of the utmost or highest degree of care, skill and diligence for the safety of the passenger that is consistent with the mode of conveyance employed.' '' (*Lundquist* v. *Chicago Rys. Co.* (1922), 305 Ill. 106 [137 N.E. 92, 93].)

█ It is to be noted that appellant's argument in this regard seemingly proceeds upon the assumption that in the absence of proof to the contrary, the law of Illinois is presumed to be the same as the law of this state. While this was the former rule, it no longer obtains. Our courts now take judicial notice of the laws of the sister states as well as the interpretation thereof by the highest courts of appellate jurisdiction of such states. (Code Civ. Proc., § 1875, subd. 3; 18 Cal.Jur.2d p. 450, § 27.)

█ The preceding discussion also disposes of appellant's further contention that the trial court erred in refusing to give an instruction in the language of section 2101. The court fully and correctly instructed the jury as to the degree of care which a carrier owes to its passengers. A copy of this instruction is set forth in the margin.[2]

█ Plaintiff further complains that the trial court erred in sustaining an objection to a question propounded upon cross-examination to the respondent's witness R. M. Smith. This witness had testified on direct examination that he saw the train when it passed Nemo, a point some 28 miles from the scene of the accident, and then observed nothing defective in its appearance. Upon cross-examination the witness was questioned at considerable length by counsel for the appellant with respect to what he observed with respect to the train. When asked if he looked at the equalizers he answered in the affirmative and in answer to the question as to what they looked like, he stated they appeared normal; that there was nothing wrong with them in as far as he could see; that he did

---

[2] ''As a common carrier the defendant was required by law to use the utmost care and diligence for the safe carriage of plaintiff, to provide everything necessary for that purpose, including vehicles safe and fit for the purposes to which they are put, and to exercise a reasonable degree of skill.

''The defendant, however, was not a guarantor of the safety of the plaintiff or of her transportation free from injury.

''Its responsibility was not to use the most effective methods for safety that the human mind can imagine, nor that the best scientific skill might suggest. The care required of it, however, was the highest that reasonably could have been exercised consistently with the mode of transportation used, and the practical operation of its business as a carrier. This requirement must be measured in the light of the best precautions which, at the time of the accident in question, were in common, practical use in the same business and had been proved to be efficacious.''

not see any equalizer "either dragging, making a noise or throwing sparks." He was then asked: "Now, in order to determine if an equalizer on a train that is going 80 miles an hour is defective, you believe that you could observe it by simply standing on the platform and watching the train go by?" To this question defendant interposed an objection which was sustained. The ruling was correct. In answer to previous questions as noted, the witness had stated that insofar as he could see the equalizers appeared normal and did not appear to be dragging, making a noise or throwing sparks. In any event, if it were to be conceded that the ruling was erroneous, it could not have operated to the prejudice of appellant.

Finally appellant complains of the refusal of the trial court to give an instruction, a copy of which appears in the margin.[3] The argument is that the instruction should have been given because of the fact that respondent produced evidence through various of its employees, that prior to the accident they carefully inspected the train and found nothing defective. We see no merit in the claim. There was no evidence that there was any defect which was "clearly visible" and consequently the requested instruction was inapplicable. Moreover, the refusal to give it could in no way have prejudiced the appellant.

The judgment is affirmed.

Shinn, P. J., concurred.

VALLÉE, J.—I dissent. I am of the opinion the court erred in excluding the record in the Meredith case insofar as it shows that after the cause was fully tried and while the jury was deliberating, defendant in open court stipulated that judgment be entered in favor of the plaintiffs in that action and that judgment was entered pursuant to the stipulation. The stipulation constituted an admission of negligence. (*McClure* v. *Steele*, 326 Mich. 286 [40 N.W.2d 153, 13 A.L.R.2d 160]. Cf. *Gonzales* v. *Pacific Greyhound Lines*, 34 Cal.2d 749, 754 [214 P.2d 809].) Certainly such conduct circum-

---

[3] "General human experience justifies the inference that when one looks in the direction of an object clearly visible, he sees it, and that when he listens, he hears that which is clearly audible. When there is evidence to the effect that one did look, but did not see that which was in plain sight, or that he listened, but did not hear that which he could have heard in the exercise of ordinary care, it follows that either some part of such evidence is untrue or the person was negligently inattentive."

stantially implied a consciousness of liability entirely different from an extrajudicial compromise. Of course, it was evidentiary only. That the error was prejudicial goes without saying.

*Brown* v. *Pacific Electric Ry. Co.*, 79 Cal.App.2d 613 [180 P.2d 424], quoted by the majority, is not at all analogous. That case involved an extrajudicial, out-of-court compromise settlement of a modest claim. Here we have a solemn, formal, judicial stipulation of liability which necessarily included an admission of negligence. The Santa Fe did not agree to a judgment against it for $125,000 merely to buy its peace.

A petition for a rehearing was denied November 5, 1958. Vallée, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied December 17, 1958. Gibson, C. J., and Carter, J., were of the opinion that the petition should be granted.