CHARLES A. WARNICK ET AL., APPELLEES, V. WILLIAM H. WARNICK, APPELLANT.

FILED FEBRUARY 16, 1922.   No. 21638.

1. Witnesses: COMPETENCY. Section 7894, Rev. St. 1913, excluding as incompetent, except as specified, the testimony of one having a direct legal interest in the result of a suit, does not apply where the transaction or conversation, concerning which the witness is called to testify, was not between the witness and the deceased person, but between the latter and a third party, in which the witness took no part.

2. ———: ———: ADMISSIBILITY OF EVIDENCE. Where a witness, having a legal interest in the result of an action, and therefore incompetent under section 7894, Rev. St. 1913, testifies to a conversation or transaction with a deceased person, and the adverse party, the representative of such deceased person, thereafter introduced in evidence documents relating to the same transaction, concerning which such witness testified, *held*, that, although the testimony of said witness may have been incompetent when received, it was made competent through the action of the representative of the deceased in introducing such documentary evidence.

3. **Evidence:** PLEADINGS. Where a party to a suit introduces in evidence the pleadings of an adversary without any reservation or limitation as to the purpose for which offered, all the statements in such documents, like other admissions, are to be taken together, what makes for the pleader, as well as what makes against him; and in such case, where the allegations of such pleadings are not rebutted or controverted by other evidence, such allegations will stand as admissions.

4. **Quieting Title:** SUFFICIENCY OF EVIDENCE. Evidence examined, and *held* sufficient to sustain the decree of the district court quieting title in the plaintiffs to the property in controversy.

APPEAL from the district court for Polk county: EDWARD E. GOOD, JUDGE. *Affirmed.*

*Good & Good, W. L. Kirkpatrick* and *E. E. Stanton,* for appellant.

*King, Bittner & Campbell* and *Mills, Beebe & Mills,* contra.

Heard before MORRISSEY, C.J., LETTON, ROSE, DEAN, ALDRICH, DAY and FLANSBURG, JJ., BROWN and ELDRED, District Judges.

ELDRED, District Judge.

On January 15, 1919, one William P. Warnick died intestate in Polk county, Nebraska, leaving surviving him his widow, Elizabeth Warnick, and three children, Charles A. Warnick, Emma J. Warnick, and William H. Warnick. This suit was instituted in the district court for said county by Charles A. Warnick and Emma

J. Warnick, as plaintiffs, against William H. Warnick, Elizabeth Warnick, and Raymond Cox as administrator of the estate of William P. Warnick, deceased, as defendants, to establish a resulting trust in the property in the possession of William P. Warnick at the time of his death, and to quiet title in the plaintiffs, as tenants in common, to the real estate in controversy.

The plaintiffs' claim is based upon an oral contract, and in their petition it is alleged that on or about the 10th day of December, 1896, the said William P. Warnick was the owner of a certain designated farm, and was residing thereon with his family; said farm with improvements not exceeding in value $7,500; that he had personal property not to exceed in value $500; that said farm was incumbered by a mortgage of $600; that he was dependent upon his children to operate said farm and make a livelihood for the family, and greatly desired that the defendant William H. Warnick, the eldest son, stay with them, which he refused to do; that he became ill-behaved and ill-willed, and unfilial in character, and abusive in word and action, toward his father; that on or about said date he left home and ever since remained unrepentant and away from his parents, except for two or three brief visits prior to the death of his father; that, after said William H. Warnick had left home, plaintiffs' said parents became much worried about operating and keeping said farm and very solicitous that plaintiffs, their remaining children, should take care of them in their declining years, and stay with them as long as they or the survivor of them should live, and help them keep their property together, and, being much grieved over the unfilial conduct of their eldest son, they then entered into an oral contract with these plaintiffs, jointly, that if plaintiffs would remain with said parents and the survivor of them, as the case might be, and help at all times thereafter, to the best of their ability, to make the farm sustain the family, and ultimately take charge and

manage the same to their interests and for the common good of themselves and these plaintiffs, so that said parents, or the survivor of them, should not want for sustenance and filial care in their declining years, then all the property, both real and personal, that their father might have and leave at his death should then and upon that event become the common property of these plaintiffs (provided that, in case their mother survived him, these plaintiffs should continue to care for and provide for her in the same manner, including her last sickness and burial) and to the exclusion of their said unfilial son, the defendant William H. Warnick, from any share therein or thereto; that, to keep these plaintiffs steadfast and faithful in the performance of said contract on their part to be kept and performed, the said parents or either of them often repeated to plaintiffs their said promises and agreements and mentioned and spoke of the same, in plaintiffs' hearing, to others at many and different times that that was the arrangement between them and plaintiffs, and that they would fix it so that at the death of the father all their property would go to these plaintiffs, and their eldest son would get none of it. Plaintiffs, relying thereon, have truly and faithfully kept and performed said contract to the satisfaction of both of said parents and to the best of plaintiffs' ability in everything so required of them, fully and completely, up to the time of the death of the said William P. Warnick, their father.

The defendant Elizabeth Warnick filed an answer in which she admits in entirety all of the allegations of the plaintiffs' petition, and alleges that said action was brought by the plaintiffs with her consent and full knowledge, and to satisfy her wish and desire that the agreement between herself and husband and the plaintiffs may in equity and justice be fulfilled according to the terms thereof, which are exactly as pleaded in the plaintiffs' petition, and that the plaintiffs may be decreed to be the absolute owners of the property which

said William P. Warnick held in his name at the time of his death.

The appellant, William H. Warnick, by answer and cross-petition, denies the alleged contract and other material averments of the petition, avers that the alleged oral contract was void under the statute of frauds, and prays for partition of said real estate.

The decree was for the plaintiffs, and the defendant William H. Warnick appeals.

The appellant contends that the court erred in admitting the testimony of Elizabeth Warnick, the widow, and Mrs. Bert Warnick, wife of Charles A. Warnick, as to the making of the contract. It is probable that Elizabeth Warnick took part in some of the conversations concerning which she testified; but the record also shows that she took no part in many of the conversations as to which her testimony related. It also appears that the witness, Mrs. Charles A. Warnick, had no part in the conversation concerning which she testified. Although the witness may have a direct legal interest in the result of a suit, still he is a competent witness against the representative of a deceased person as to any conversation between the deceased and a third person, in which the witness took no part. *DeWulf v. DeWulf,* 104 Neb. 105; *McNea v. Moran,* 101 Neb. 476; *In re Estate of Powers,* 79 Neb. 680; *Kroh v. Heins,* 48 Neb. 691.

After the evidence just referred to was received, the appellant offered in evidence, without any reservation or limitation as to purpose, the plaintiffs' petition and the answer of the defendant Elizabeth Warnick. These documents set out the transactions concerning which the testimony of Elizabeth Warnick and Mrs. Charles A. Warnick, complained of, was offered. Section 7894, Rev. St. 1913, specially excepts from the provisions of that statute the testimony of such a witness where the adverse party shall have introduced a witness who has testified in regard to such transaction or conversation.

Whether the testimony of the witnesses was objectionable when offered or not, such testimony was made competent through the action of the appellant in introducing evidence of the same transaction after the testimony of such witnesses had been received. *Bangs v. Gray,* 60 Neb. 457; *Cline v. Dexter,* 72 Neb. 619.

On the part of the appellees it is contended that the petition and answer of Elizabeth Warnick having been offered in evidence by appellant without any reservation or limitation as to purpose for which offered, and that the appellant is bound by the allegations therein not rebutted or controverted by other evidence. The rule in such cases appears to be that, where a party to a suit introduces in evidence his adversary's pleadings without any reservations or limitations as to the purpose for which offered, all the statements in such documents, like other admissions, are to be taken together, what makes for the pleader, as well as what makes against him; and in such case, where the allegations of such pleadings are not rebutted or controverted by other evidence, such allegations will stand as admissions. *Portland Body Works v. McCullough Motor Supply Co.,* 119 N. E. (Ind. App.) 180; *Yates v. People,* 207 Ill. 316; *McCord v. Durant,* 134 Pa. St. 184; *Chicago & A. R. Co. v. Harrington,* 192 Ill. 9; *Baskett v. Jones,* 189 Ky. 391.

It appears from the evidence that for several years prior to arriving at the age of majority the appellant, William H. Warnick, was given to quarreling with his father, and that he was unfilial in his attitude. It is suggested in the appellant's brief that the disagreements were due to certain idiosyncrasies of temper and temperament of the father. So far as the record discloses, we believe the only fair conclusion is that the trouble was due to the fault of the appellant, and not of his father. He was not only unable to get along with his father, but with the other members of the family and with his wife, after marriage. This trouble with his father was carried to the extent of threatening and attempting personal

violence toward him, with different weapons, on several
occasions.  On leaving home the last time, about Decem-
ber, 1896, he had difficulty with his father over wages
he claimed due him, which was settled through arbitra-
tion.  From that time on until November, 1915, about 19
years, although in the same neighborhood, appellant
never visited the parental home.  About that time, ap-
pellant's wife having left him, he wrote his sister, the
appellee Emma J. Warnick, indicating remorse and
soliciting her to come and keep house for him for a
time, which she did for several months.  During that
time the parents visited the daughter at appellant's home,
and it is now argued that a reconciliation then took
place.  Trouble soon arose between the appellant and
his sister, and she returned to her parents' home; and
from that time until the father's death the attitude of
the appellant toward his father remained practically
the same as it had been for nearly 20 years previous.
We are of the opinion that no reconciliation took place.
The treatment by the appellant of his father shows a
reason for the action of the deceased, and the probability
that he would enter into such an agreement as is claimed
by the appellees in this case.

At the time of the father's death the appellee Charles
A. Warnick was about 35 years of age, and the appellee
Emma J. Warnick 43 years of age, she having never
married.  Soon after the appellant left home in 1896,
the father told his remaining children that, if they
would stay at home and do what was right, when he
was through with what he had, they should have it;
that the appellant, William H. Warnick, should not get
any of his property if he could help it.  He made these
statements and promises in the presence of Elizabeth
Warnick, Mrs. Bert Warnick, prior to her marriage
with Charles A. Warnick, and Charles Doremus.  He
made and repeated the statements many times.  This
evidence is corroborated by declarations of the deceased
to various neighbors, that the appellant, his son, should

never have any of his property. The evidence further shows that Charles A. Warnick and Emma J. Warnick faithfully performed the conditions of the contract on their part. They have spent the best portions of their lives working for the interests of the estate. The value of their services is impossible of calculation, and, if the contract is not sustained, the appellees will be deprived of remuneration for the services they have performed. They both remained on the farm so long as the parents remained there, and until a few years prior to the father's death, performing such acts as are incidental to farm life, and as would naturally be within the contemplation of the parties at the time the contract was made, and at all times treated their parents with kindness and consideration. On the parents retiring from the farm the daughter accompanied them; she continued to devote her time, first to the care and attention of her her parents, and the remainder to dressmaking. The appellee Charles A. Warnick remained with his wife on the farm, looking after the property, although, during a part of the time at least, working the land, or a part of it, for a share of the crops. There is nothing in the arrangement after the removal of the parents from the farm inconsistent with the intent to carry out the original contract. A similar condition existed in *Moline v. Carlson,* 92 Neb. 419, and *Johnson v. Riseberg,* 90 Neb. 217, in which specific performance of a like contract was awarded. There was no evidence offered to contradict the testimony as to the making of the contract, and of the compliance with the contract on the part of the appellees; nor was any testimony offered to refute the evidence submitted by plaintiffs to show the reason that the deceased had for discriminating against the appellant. The appellant did not testify. All the evidence offered in support of plaintiffs' claim is practically uncontroverted.

We believe that the finding that the contract was made and the services were performed by appellees in

reliance on the contract is fully justified. The evidence of compliance is shown as fully as could be expected in a case of this character. There is nothing in the case to indicate that the plaintiffs performed the services under any other or different agreement than as claimed. The agreement was a reasonable one, and the appellees, plaintiffs, having fully performed their part of the contract, are entitled to have the agreement fulfilled.

The decree of the district court is

AFFIRMED.

MORRISSEY, C. J., dissents.

FLANSBURG, J., dissenting.

I am unable to agree with the opinion of the court in this case. The proof, according to our decisions in *Remaly v. Sweet*, 106 Neb. 327, *Overlander v. Ware*, 103 Neb. 375, and other cases, is entirely insufficient, in my opinion, to sustain the judgment.

William P. Warnick died intestate. He left three children. It is the contention that he made an oral contract with two of these children that they should, after his death, receive his estate, and that one child, William, should be excluded from any inheritance. It appears that William was a wayward son, and the testimony of several witnesses shows repeated statements by the father that he did not intend that William should receive any share in his property after his death. The oral contract is alleged to have been made when the children were young and minors, and, as set out in the opinion, purports to be nothing more than statements by the father that he was displeased with the actions of William, that he intended to disinherit him, and a promise that, if the other two children should remain at home and "do what was right," they should inherit the property. What they were required to do in order to "do what was right" is, by the alleged contract, indefinite and left entirely to conjecture. It was the natural duty of these children, and one which the parent could enforce, that they should remain at home and do what was right during their minor-

ity. The agreement did not specifically require that they should remain at home after they had reached their majority, nor, indeed, for any definite length of time. There is no specification of what acts should be required of these two children, even though they remained at home, in order that they should become entitled to inherit the property of their father, to the exclusion of William. Such a condition of proof as is presented here is, in my opinion, entirely insufficient to establish a clear, definite and enforceable contract and one unequivocal in its terms. No definite consideration is shown. The fact that the children remained on the premises after their majority is not referable to any agreement requiring them to do so, and cannot be held to be performance by them of any contractual stipulation. The fact that they remained at home, and may be considered to have done what was right, during their minority, being something that they were by law required to do, regardless of contract, constitutes no consideration. Had the two children always done what was right but left the place at their majority, is it to be supposed that their father would have wished to disinherit them? Had the father changed his mind after these two children had remained at home during their minority and after they had always done what was right during that time and at all times afterwards, it would not have been a fraud upon them, had he refused to give the property to them, to the exclusion of William, for they would not then have rendered to him anything which should not have been rendered in the absence of any such agreement. Not only is there a failure of proof of any definite contract, from which the specific obligations of the parties can be ascertained, but there is nothing to take this case, in any event, as I view it, from under the operation of the statute of frauds.

A mere declaration by a parent that he intends to disinherit a child, because the child has been disobedient, or because he has no love for the child, will not, in law, work a disinheritance. Neither could an inheritance of certain children be enlarged, at the expense of other heirs in the estate, by such a declaration. The contract which is claimed to have been proved does not go, to any substantial degree, farther than the mere making of such declaration.

It seems to me that the rule, established by the opinion in this case, goes far to leave the matter of the descent of property to the hazard of verbal testimony, and to undo the salutary purpose furnished by the statute, which requires that wills shall be in writing and shall be executed, in the presence of disinterested witnesses.