Ruth K. ATTAWAY, Individually and as Guardian of the Estates of Sandra K. Attaway et al., Appellants,

v.

FORT WORTH AND DENVER RAILWAY COMPANY, Appellee.

No. 16095.

Court of Civil Appeals of Texas. Fort Worth.

April 8, 1960.

Rehearing Denied May 6, 1960.

Bullington, Humphrey, Humphrey & Fillmore, and Lee Humphrey, Wichita Falls, for appellants.

H. M. Muse, Wichita Falls, Jones, Parish, Fillmore & Robinson & Lambert, and Elmer H. Parish, Wichita Falls, for appellee.

MASSEY, Chief Justice.

This is a suit for damages against a railroad growing out of a fatal automobile-train collision at a crossing on a state highway. Plaintiffs, surviving wife and children of the deceased, have perfected an appeal from a "take nothing" judgment of the trial court.

Judgment affirmed.

Plaintiffs' decedent was the passenger in an automobile driven by another at time of the fatal accident. The driver of the automobile was a Mr. Spencer. The deceased was sitting in the front seat of the automobile. There were 23 special issues which submitted the plaintiffs' theory of liability, plus three special issues on the matter of damages. By answers returned the jury refused to find in the affirmative as to any of them other than to a part of those submitting the theory of discovered peril. On the discovered peril theory the jury found that the deceased was in a position of peril immediately prior to the collision, and that one or more of the persons operating the defendant's train discovered that he was in a perilous position and that in all reasonable probability he would be unable to extricate himself therefrom in time to avoid injury. Further finding made, however, was against plaintiffs' discovered peril theory, for the jury refused to find that the operators of the train made such discovery in time to have avoided the fatal collision by the use of all the means at hand, consistent with the safety of the train and crew.

Considering the negative findings of the jury as though they unquestionably amounted to affirmative findings against plaintiffs' contentions, it was established thereby that the crossing in question was not extrahazardous and the defendant's failure to put an automatic wig-wag signal, an automatic flasher signal device, or a flagman thereat was not negligence; that the operating crewmen on the train operated the same at a reasonable speed, keeping a proper lookout, and properly sounded the whistle and rang the bell on the locomotive as an approach was made upon the crossing.

The defendant's defensive theories were submitted to the jury by use of 69 special issues. Though refusing to find that either Spencer or the deceased failed to keep a proper lookout in certain issues, refusing to find that either of them "failed to look" in other issues, and refusing to find that either of them "failed to see the approaching train" in still other issues, the jury nevertheless severally found that both Spencer and the deceased "failed to listen", "failed to heed the locomotive whistle",

and "failed to heed the locomotive bell". In each instance additional findings were made that such was negligence and a proximate cause of the collision, though the jury refused to find that Spencer's negligence was the "sole" proximate cause. The jury also found that plaintiffs' decedent was negligent in failing to warn Spencer of the approach of the train and that such failure was a proximate cause of the collision.

■ Plaintiffs' first point of error makes complaint because the trial court sustained special exceptions to a part of their pleadings and struck therefrom, over their protest, allegations that the defendant railroad was negligent in "failing to slacken the speed of said train as same approached the crossing", in "failing to have such train under reasonable control, as the same approached such crossing", and in "failing to stop such train before running into and colliding with the automobile, in which the deceased was riding". Plaintiffs contend that but for the action of the court in sustaining the exceptions and striking the allegations from the pleadings they would have been entitled to have additional special issues submitted to the jury presenting an ultimate question, or ultimate questions, which the jury might have answered in their behalf and upon which a recovery might have been founded. Necessarily, plaintiffs couple with such contention the argument that prejudicial, reversible error was committed in the manner in which the defendant railroad's defensive theory was submitted to the jury in the court's charge. This is discussed at a later point in the opinion, but for the sake of convenience in the discussion of the first point of error we will assume that plaintiffs would be entitled to another trial if they are correct, and we will disregard the fact that there has been any finding of contributory negligence.

It must be remembered that in railroad cases the trains run on tracks and are not subject to being turned either right or left, and of course neither up nor down, and therefore in the matter of control the only evasive action which can be taken by the operators of a train when they discover persons or property on their tracks, or moving, or being so moved or operated that they will be on the tracks at time of the arrival of the train, is that of either slackening the speed of the train or stopping it. "Slackening" of the speed might suffice in instances where a mere reduction of the speed of the train will permit the track to be cleared before the train arrives. In instances where the track could not be cleared before the arrival of the train at the point of obstruction, collisions could only be avoided by "stopping".

Bearing the foregoing in mind we examine the special issues submitted to the jury. It will be observed from the resume of jury findings on the plaintiffs' issues the jury refused to find that the train was being operated at other than a proper rate of speed, or that the operators of the train failed to keep a proper lookout. The jury furthermore found, in accord with plaintiffs' contention, that the deceased was in a position of peril, where he was discovered by the railroad crewmen, who realized at time of discovery that he would probably be unable to extricate himself,—but against plaintiffs' theory in that the jury refused to find that the crewmen could, by the use of all means at hand, consistent with the safety of the train and crew, have avoided injuring the deceased.

Acts or measures to be taken by the train operator to avoid a collision, once the duty arises, includes the application of the brakes on the train. The duty to apply the brakes arises only after discovery of a condition or circumstance which would cause an ordinarily prudent person to so apply them in order to avoid injury to him to whom the duty is owed. In the instant case (if indeed not in every railroad crossing case where the doctrine of "discovered peril" is invoked, raised by the evidence, and submitted), the special issues which submitted the plaintiffs' theory under the

"discovered peril doctrine", coupled with the issues on speed and lookout, have afforded plaintiffs every right for which they contend under the point of error advanced.

If special issues had been submitted, in answer to which the jury found that the crewmen on defendant's train failed to slacken the speed of the train immediately before the collision, which was negligence and a proximate cause of the collision and the injuries resulting in the death of the deceased, what would have been the situation when such answers were considered in light of the jury findings on plaintiffs' "discovered peril" theory? The jury did find that defendant's crewmen (who were operating the train at a proper speed and keeping a proper lookout) did not discover the peril of the deceased and know and realize that he was in a perilous position from which he could not extricate himself within time to avoid injuring him. We believe that it is inescapable that such findings would have presented a fatal and irreconcilable conflict. Furthermore, the form of submission would have amounted to the submission of what is substantially a single theory in two ways, at least one of which would have involved improper repetition of a party's theory of recovery or defense. It is of this very thing that the plaintiffs complain in respect to the manner by which the trial court submitted the issues upon the defendant's theories. The point is overruled.

■ When a plaintiff in a suit for damages has not been able to obtain any jury findings upon which a judgment in his behalf for damages in some amount could be entered, and where the special issues submitting said plaintiff's theory of the case and upon which any recovery would necessarily be founded were placed in the charge ahead of issues, if any, which submitted his opponent's defensive theory, it would be difficult, if not impossible, to demonstrate the existence of reversible error under the provisions of Texas Rules of Civil Procedure 434 because the defensive issues were unduly emphasized to the prejudice of

the plaintiff. Such difficulty would be enhanced when there is no extrinsic evidence demonstrating that by reason thereof some juror was induced to return a verdict other than that which he would have returned but for the nature of the charge.

That is the situation in the instant case. By their remaining point of error the plaintiffs point out the special issues in the charge which submit their theory of recovery, answers to which the jury returned against them. Pointing out further, and in addition, the form and disproportionate number of defensive issues submitting the theory of the defendant railroad (as to some of which the jury returned answers in favor of the defendant and against them), plaintiffs say *not only that* "but for the erroneous form of submission of the defensive issues" one or more jurors would in all probability have refused to agree to a verdict wherein there was no finding that the defendant railroad was guilty of negligence which was a proximate cause of the injuries resulting in the death of the decedent, but *furthermore necessarily say that* one or more jurors would in all probability have refused to agree to a verdict wherein there was a finding that the decedent was guilty of any act of contributory negligence which was a proximate cause of the said injuries. This is so because the jury did find contributory negligence.

■ Admittedly, it has always constituted error to submit what is substantially a single theory in several different ways, the issues of each worded in slightly different language. Repetition of the factual elements in such manner is an improper repetition of a party's theory and gives undue emphasis to same to the prejudice of his adversary. Lone Star Gas Co. v. Ballard, Tex.Civ.App.1940, Fort Worth, 138 S.W.2d 633, error refused. See the authorities cited in the opinion, especially Speer's Special Issues. See also Hodges on Special Issue Submission in Texas, Ch. VI, "Size and Number of Issues", pp. 133–142, incl., Subd. E, "Shades and Phases of

Other Issues", Sections 53, 54 and 55. But with the effective date of Texas Rules of Civil Procedure this type of erroneous charge became subject to tests determinative of reversibility under Texas Rules of Civil Procedure, rule 434. And, as Professor Hodges has observed " * * * the error involved is frequently and properly found to be harmless and hence non-reversible error." Especially would this be true when no inconsistent answer is found in the verdict of the jury, and there is apparent harmony in all the answers returned.

Plaintiffs seek to demonstrate application of the holding and decision of the San Antonio Court of Civil Appeals in the case of H. E. Butt Grocery Co. v. Johnson, 1949, 226 S.W.2d 501, 506, writ ref. n. r. e., to the instant circumstances. In that case the appellate court reversed a judgment for the plaintiff in the trial court because of the submission of five issues immediately antecedent to the special issue which submitted the defensive issue on plaintiff's failure to keep a proper lookout. The jury failed to find that plaintiff had failed in such respect and returned the answer "No" to the issue. The antecedent issues, immediately preceding the said defensive issue, were ones in answer to which the jury found that the "wet substance" in question was not obvious to plaintiff, the "broken glass" was not obvious to plaintiff, plaintiff did not fail to exercise ordinary care to discover the wet substance nor the broken glass, and that a person of ordinary prudence situated as plaintiff was would not have discovered the broken glass. Stating the rule that "Whenever a party's right to a clear-cut submission of his theories of recovery or defense is unduly prejudiced by the use of excessive and unnecessary issues, a reversal of the judgment must be ordered", the court held that "probable prejudice" under T. R. C. P. 434 resulted " * * * from depriving appellant of a fair submission of its pleaded defense of contributory negligence, by confusing and confounding the controlling issue with a number of questions which decide nothing but serve as improperly supplied argumentative bases from which to assault and overthrow appellant's defensive theory."

We fail to observe any analogy in the question decided in the H. E. Butt Grocery case and the question presented here. The plaintiffs in the case under consideration were not deprived of the fair submission of their theory of recovery by any issues which preceded them in the charge, and we do not believe that accompanying erroneous action in using excessive and unnecessary issues in the submission of the defendant's theory of defense at a point later on in the charge could have prejudiced the plaintiffs on issues placed in the forepart of the same charge. At least that would be true in the instant case, where there is nothing in supplement in the nature of testimony which purports to demonstrate any prejudicial effect upon the mind of any member of the jury. Indeed, if the jury was persuaded to act in anywise other than it would have acted by reason of the presence of excessive and erroneous issues incident to the submission of the defensive theory, it could reasonably only have been by way of an affirmative act of answering one or more of the defensive issues in favor of the defendant, *not in any failure to answer for plaintiffs on any of the issues submitting the plaintiffs' theory of recovery*. Ligon v. Green, 1947, Tex.Civ.App. Fort Worth, 206 S.W.2d 629, writ ref. n. r. e.

Furthermore, we are of the opinion that plaintiffs did not meet the requirements of T. R. C. P. 274 in so sufficiently objecting to the charge as to point out distinctly to the trial court the matter to which they objected and the grounds therefor (as presented in the points of error on this appeal). We do not believe that it is apparent from the record that the trial judge, though fully cognizant of the grounds for complaint (urged here on the appeal), nevertheless chose to submit the defensive issues which were actually submitted to the jury.

Judgment is affirmed.