HAROLD SHEETS, ADMINISTRATOR OF THE ESTATE OF SHIRLA
SHEETS, DECEASED, APPELLANT, V. ORVILLE DAVENPORT,
ADMINISTRATOR OF THE ESTATE OF DANIEL DAVENPORT,
DECEASED, APPELLEE.
OTIS LARREAU, ADMINISTRATOR OF THE ESTATE OF SONJIA
LARREAU, DECEASED, APPELLANT, V. ORVILLE DAVENPORT,
ADMINISTRATOR OF THE ESTATE OF DANIEL DAVENPORT,
DECEASED, APPELLEE.

150 N. W. 2d 224

Filed April 21, 1967. No. 36294.

Miles N. Lee and Smith Brothers, for appellants.

Roy E. Blixt and Murphy, Pederson & Piccolo, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, and McCOWN, JJ., and POLLOCK, District Judge.

POLLOCK, District Judge.

The administrator of the estate of Shirla Sheets, deceased, and the administrator of the estate of Sonjia

Larreau, deceased, filed claims against the estate of Daniel Davenport, deceased, to recover for the alleged wrongful deaths of their decedents. They sought recovery under the guest statute, claiming gross negligence on the part of Davenport in the operation of a motor vehicle. The actions were consolidated in the county court, we assume by agreement. Upon ultimate trial in the district court, the jury returned verdicts for the defendant and plaintiffs appeal.

Plaintiffs' decedents were two of three guest passengers riding in a 1955 Ford automobile operated by defendant's decedent on October 25, 1960, when it was in a motor vehicle collision and all four occupants, young people ranging in age from 15 to 20 years, were killed. The automobile was proceeding in a southerly direction on Highway No. 40, and collided with a 1959 Ford truck proceeding in a northerly direction on said highway. The collision occurred near the northwest corner of a bridge across the South Loup River a short distance south of the village of Arnold, Nebraska. The bridge was 66 feet long and 23 feet wide between the caps. It was a straight truck with dual wheels in the rear, 21 feet long, operated by William J. Halouska, owned by his employer James C. Davenport, a brother of Daniel Davenport, and was loaded with 250 bushels of milo.

The plaintiffs contend that the trial court erred by giving to the jury instruction No. 11a, as follows: "There is a presumption that a driver of an automobile who was killed in an accident used due care in the operation of his automobile and operated it lawfully. The instinct of self preservation gives rise to such presumption."

The presumption in an action for wrongful death that a decedent exercised reasonable care for his own safety is without evidentiary value. Aeschleman v. Haschenburger Co., 127 Neb. 207, 254 N. W. 899. It is a mere rule of law which obtains only in the absence of direct or circumstantial evidence justifying an inference as to whether or not the deceased used due care, and

when evidence is produced, the presumption disappears and is not entitled to be considered. O'Dell v. Goodsell, 152 Neb. 290, 41 N. W. 2d 123.

In the instant case the presumption did not arise because there was direct evidence sufficient to justify an inference of negligence on the part of Daniel Davenport. Truck driver Halouska, an eyewitness, testified that Davenport was driving on his "wrong side" of the roadway and at a rate of speed of approximately 85 miles per hour. It is true that he made some conflicting statements, but the weight of his evidence is for the jury, and regardless of the weight to be given thereto the presumption could not obtain.

The effect of the instruction was to permit the jury to determine whether the evidence of negligence outweighed the presumption to the contrary. We regard this to be prejudicial error requiring reversal of the judgment and a new trial.

Further, we think the presumption should not be mentioned in jury instructions. It is a rule of law to be applied by the court. It has no probative force. Jurors are triers of the facts, and should only be permitted to determine the weight of the evidence, and not whether the presumption has been overcome by evidence.

Where evidence of negligence on the part of a deceased is sufficient to present a jury question, the presumption does not arise and the jury should not be instructed about it. Where the evidence is insufficient to present a jury question, the jury is not instructed.

Plaintiffs urge error in the reception in evidence of pleadings and covenants not to sue offered by the defendant as admissions against interest. The pleadings included four claims of petition length filed by plaintiffs in the county court to recover against the estate of Daniel Davenport for alleged wrongful death, six petitions filed on appeal in the district court, and two petitions they filed in the district court in separate actions against the operator and the owner of the truck.

In the actions last mentioned, plaintiffs claimed that the accident was proximately caused by negligence of Halouska in the operation of the truck. In the other actions plaintiffs claimed that negligence of Halouska combined and concurred with gross negligence of Daniel Davenport in proximately causing the accident, then plaintiffs amended herein, after making settlements with the owner and operator of the truck, and claimed that gross negligence of Daniel Davenport was the sole proximate cause of the accident. Prayers and allegations about damages were generally deleted.

It is obvious that but a very small part of the pleadings introduced in evidence bear the remotest relationship to any alleged admission against interest. In some cases it has been said that pleadings may be received in evidence as admissions against interest. However, it is more accurate to say that admissions in pleadings may be so received. Pleadings are only admissible so far as they relate to the subject matter of the admission.

In proving an admission against interest in a pleading, a party is only required to offer so much of the pleading as is necessary to show the admission. Sibert v. Hostick, 91 Neb. 255, 135 N. W. 1054. Only that part of a pleading which is material to the subject matter of the admission is admissible in evidence.

What may be received as admissions? Admissions are words and conduct of a party opponent offered as evidence against him. An admission against interest is admissible when it contravenes a position taken upon trial by the party making the admission. McNealy v. Illinois Central R.R. Co., 43 Ill. App. 2d 460, 193 N. E. 2d 879.

Our decisions tend to discourage the unrestricted offering in evidence of pleadings. For example, where a party to an action introduces in evidence the pleading of an adversary without any reservation or limitation, all statements offered, whether they are favorable to or against the pleader, are to be taken together, and the

party offering them is bound thereby where not rebutted or controverted by other evidence. Warnick v. Warnick, 107 Neb. 747, 187 N. W. 51.

A party against whom an admission in his pleading has been offered in evidence is privileged to offer other parts of the same pleading or of his other pleadings which tend to explain or destroy the admission, but this right does not permit him to introduce self-serving statements which are unrelated to the admission. Southall v. Columbia Nat. Bank (Mo. App.), 244 S. W. 2d 577.

After defendant introduced pleadings, the plaintiffs had their turn. Over objections of defendant, the court received in evidence various county court pleadings, including notices of appeal, praecipes for transcript, and orders approving settlements and authorizing execution of covenants not to sue. We have not been favored with any explanation of how any of these exhibits served in the least in weakening or destroying the effect of any admission.

The covenants not to sue which defendant introduced in evidence were executed by plaintiffs in connection with their settlements of the separate actions against William J. Halouska and James C. Davenport, each in consideration of $3,000. After some deletion, they were received in evidence, and like the pleadings received, were read to the jury, including the amounts of the settlements. At defendant's request, the court instructed the jury, in substance, that it should not take into account the amounts paid plaintiffs by James C. Davenport or William J. Halouska or other persons, but should make any award to them in the full amount of the damages, and the court would subtract such sums of money as plaintiffs had received in settlements.

A jury should not be informed or instructed about the fact of settlements or the amounts thereof. Issues relating thereto are solely for the court.

However, plaintiffs cannot complain of the reception in evidence of pleadings or covenants not to sue offered by

defendant. Plaintiffs joined in stipulating for their admission "in keeping with the directions of the Court made at a pretrial conference and in further keeping with the directions and the order of the Court as made and entered before impaneling of the jury and commencing of the trial of the cause." Several days later, near the end of the trial, plaintiffs sought to object, but this was too late.

Where a plaintiff, in the presence of the jury, joins in stipulating for the admission in evidence of covenants not to sue and for the disclosure of the amounts of settlements, he cannot urge error. A late case involving covenants not to sue cites an earlier case involving them. See Neill v. McGinn, 175 Neb. 369, 122 N. W. 2d 65, where this court said: "In Tankersley v. Lincoln Traction Co., 101 Neb. 578, 163 N. W. 850, this court held that it was prejudicial error to allow counsel for the plaintiff to state to the jury the fact of such settlements and the amounts thereof. * * * Where the plaintiff joins with the defendant in a stipulation made in open court before the jury which discloses the existence of a settlement with a joint tort-feasor and the amount thereof, plaintiff cannot on appeal urge error * * *."

The reception in evidence of the pleadings and covenants not to sue, chiefly by stipulation, resulted in placing before the jury some twenty exhibits of a few pages each, thereby encumbering the record, extending the trial, and, we have no doubt, in confusing the jury. We think that a trial court, under such circumstances, regardless of stipulations, would be justified in rejecting the proffered exhibits until there had been a separation of the grain from the chaff.

There is reference in the bill of exceptions to a pretrial conference although there was no order reflecting the proceedings thereof as required by the rules of this court providing as follows: "The court shall at the time of the pre-trial hearing make a record of the proceedings which recites the action taken at the conference, * * *

counsel shall forthwith acknowledge their assent thereto, or, in the alternative, state into the record any and all objections they may have thereto; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." Revised Rules of the Supreme Court, 1963, p. 35.

No objection was interposed because of the lack of an order reflecting the pretrial proceedings, nor to the pretrial order announced during the trial, as follows: "I give you the alternative of use as to William Halouska and this goes in plus the covenant not to sue, otherwise, William Halouska is not permitted to testify."

The defendant objected to testimony of Halouska, asserting that he was incompetent to testify under section 25-1202, R. R. S. 1943, known as the dead man's statute. However, he had no direct legal interest in the result of the action being tried and was not disqualified. His testimony should have been received unconditionally.

We conclude that plaintiffs cannot urge error in the reception in evidence of pleadings and covenants not to sue offered by defendant.

Plaintiffs contend that the court erred by instructing the jury that they had the burden to prove that gross negligence of Daniel Davenport was "the" proximate cause of the accident rather than "a" proximate cause. This contention has no merit. The court instructed that plaintiffs must prove "That such gross negligence of Daniel Davenport was the sole, proximate cause of the accident, or, if not the sole, proximate cause of the accident, concurred with negligence or other conduct of William Halouska, if you so find, as a proximate cause of said accident." All claims of the parties as to proximate cause were clearly presented.

Plaintiffs also assign error as follows: "The court erred in refusing to allow the expert testimony of W. J. Wieland regarding his opinion as to the speed of the vehicles and the place and location of the impact and

other facts * * * concerning the accident and has sufficient knowledge of such facts to make the calculations upon which his opinion was based."

There was no effort to point out specific evidence, particularly with respect to the "other facts" tending to show the position of the vehicles. The rule is stated in Barton v. Wilson, 168 Neb. 480, 96 N. W. 2d 270, as follows: "In Davis v. Dennert, 162 Neb. 65, 75 N. W. 2d 112, this court said: 'In order that assignments of error as to the admission or rejection of evidence may be considered, the holdings of this court require that appropriate reference be made to the specific evidence against which objection is urged.' See, also, Joiner v. Pound, 149 Neb. 321, 31 N. W. 2d 100; Bolio v. Scholting, 152 Neb. 588, 41 N. W. 2d 913; Wieck v. Blessin, 165 Neb. 282, 85 N. W. 2d 628." Notwithstanding, we shall examine the record and ascertain whether or not a plain error has been committed.

Bert Troyer was a village marshal and a former deputy sheriff. He testified that milo was scattered along the highway with more on the east side than the west, chiefly for 20 to 25 feet north of the bridge with some of it 40 or 50 feet north of the bridge. He found debris, metal, and glass, in the first 25 feet, with little beyond. He remained until the vehicles had been separated. His observations included no marks of either vehicle on the pavement.

Lieutenant Hubka of the Nebraska Safety Patrol said the vehicles collided on the northwest corner of the bridge although he could not fix the point of impact. He said the vehicles were jammed together. Except for its box the truck was junk. The left front wheel of the car was under the front end of the truck. The right front wheel of the car was 4 feet, 5 inches, from the west edge of the bridge, and the right rear corner was on the west rail of the bridge and south of the bridge sign. The distance from the left rear wheel of the truck to the south end of the bridge was 44 feet. The truck was

stopped diagonally on the bridge, with its front driven back beneath its transmission.

There was milo under the truck and surrounding its right rear wheel. Milo was a foot deep in front of the truck and extended as a blanket over the roadway for some 25 or 30 feet north. Lieutenant Hubka helped remove the milo with scoops and brooms, then made a careful search of the surface of the highway and found that neither of the vehicles had made any marks of any kind. He said that gouge marks and stains were made when the vehicles were dragged away and their wheels would not turn. He identified these marks on photographs, exhibits 7 and 10.

Cecil Gunther, a mechanic, moved the truck from on top of the automobile. He first moved it about 30 feet by backing the wrecker and dragging the truck. Then he removed the driveshaft so the wheels could turn, and towed the truck to town. He said that marks were made on the paving when he dragged the truck, and that no marks were there before the truck was moved.

Halouska testified the empty truck weighed about 7,800 to 8,000 pounds. He said he was driving about 30 miles per hour, saw Daniel Davenport about a quarter mile away, proceeding across the bridge, relaxing his throttle and slowing down to about 28 miles per hour, saw a flash of light which blinded him, possibly a reflection of the sun from the Davenport car, and then found himself on top of the truck. Davenport had been in his lane for a ways.

The witness Wieland was a professor emeritus of mechanical engineering. He made amazing claims of his ability to discern and identify tracks of the truck when he went to the scene of the accident on November 7, 1960, 13 days after the accident. According to offers of proof, he was prepared to testify that there were discernible tracks made by the right rear wheels of a truck commencing about 2 feet west of the east side of the highway at a point 30 feet north of the bridge, thence

south for 15 feet where there was an apparent mark made by the outer wheel which continued and extended in a southwesterly direction to a point which would have been the exact location of the rear inner dual wheel of the truck where it rested after the collision, and that the debris and milo would substantiate the tracks he found, and would be associated with, and it could be established that it was made by the dual wheels on the right hand side of the truck operated by Halouska; that these tracks proceeded through an oil spot before it was oily; that he found marks or gouges on the surface of the highway he could associate with vehicles involved in the collision; that these marks were on the photographs in evidence (which Lieutenant Hubka said were not there until the truck was moved); that he inspected the truck and pictures of the car, considered that the milo weighed about 13,400 pounds (loaded truck over 21,000 pounds), applied laws including "Conservation of Momentum," that in his opinion the collision occurred some 48 feet north of the north end of the bridge (where no other witness placed it); and that in his opinion the automobile was traveling at a speed of not less than 96 miles per hour. This would have meant the 1955 Ford occupied by four young people collided with an oncoming truck which, with cargo, weighed some four or five times as much, and drove it backward about 48 feet. Wieland pointed out on photographs identified as exhibits 7 and 10, gouge marks on the paving which he was prepared to say he could associate with and identify as having been made by vehicles involved in the accident. They were the gouge marks the other witnesses said were made when the vehicles were dragged apart.

Evidence of tire marks at the scene of an accident is admissible in civil actions where a sufficient foundation is laid by showing that the condition of the road was the same as it was at the time of the accident and had not been changed by weather or traffic, and where there is a sufficient identification of the marks to show that

they were made by vehicles involved in the accident. Egenberger v. National Alfalfa Dehydrating & Milling Co., 164 Neb. 704, 83 N. W. 2d 523.

We have held that it is error to admit evidence of foot and tire marks observed some 15 or 16 hours after the accident, in the absence of proof that the conditions at the scene of the accident were the same as they were after the accident. Ficke v. Gibson, 153 Neb. 478, 45 N. W. 2d 436. In another case we held that the trial court had not abused its discretion by admitting evidence of the sheriff as to the location of the vehicles and the presence of debris and skid marks, where he arrived 17 minutes after the accident. Spani v. Whitney, 172 Neb. 550, 110 N. W. 2d 103.

The gouge marks and tire marks Professor Wieland claims to have discerned 13 days after the accident were not shown to have been made by vehicles involved in the accident. There was no evidence that the conditions were the same. There was no foundation laid as a prerequisite to the admissibility of his testimony as to his observations made at the scene of the accident. The elapsing time is an important consideration.

Our jurisdiction is one which does not permit skilled or expert opinion as to the point of impact or collision in motor vehicle collision cases. Petracek v. Haas O.K. Rubber Welders, Inc., 176 Neb. 438, 126 N. W. 2d 466.

We think that the trial court very properly refused to permit the witness Wieland to say what he claimed to have discerned or what he opined.

Plaintiffs complain because the trial court refused to permit counsel to use schematic drawings in their closing argument to the jury. Generally, a trial court may in its discretion permit counsel, in addressing a jury, to display and use schematic drawings, diagrams, and maps, not put in evidence, by way of illustration or elucidation of evidence actually adduced, provided the jury is sufficiently informed and understands that they are employed for such purposes and are not of themselves evi-

dence in any sense. Egenberger v. National Alfalfa Dehydrating & Milling Co., *supra*.

However, the schematic drawings which counsel for plaintiff proposed to use in addressing the jury were not preserved in the record, no reviewable error is presented, and we are unable to determine whether there was any abuse of discretion. Necessarily, we must assume that the trial court did not abuse its discretion in this respect.

For the reasons stated, the judgment is reversed and the cause remanded for new trial.

REVERSED AND REMANDED.