**Iman OTWELL and Carol Otwell, Appellants,**

**v.**

**C. S. SCOTT, d/b/a C. S. Scott Truck Lines et al., Appellees.**

**No. 7856.**

Court of Civil Appeals of Texas.

Texarkana.

Feb. 20, 1968.

Don Friedman, Harry Friedman, Harkness, Friedman & Kusin, Texarkana, for appellants.

James Robert Hubbard, Wheeler, Watkins, Hubbard, Patton & Peek, Texarkana, for appellees.

CHADICK, Chief Justice.

This is a common law tort action arising out of a collision between two motor vehicles, a truck and a station wagon, meeting on an open highway. The jury answers to special issues acquitted the defendant truck driver and his employer of all negligent acts and omissions charged by the plaintiffs. The trial court entered a take nothing judgment and it is affirmed.

The plaintiffs in the trial court, appellants here, have briefed four points of error. The first two are grouped for argument. The statement and argument in support of the points divides appellants' complaint into three parts. First. Jury misconduct necessitating a reversal because the jury found there were three separate sole proximate causes of the injury in question, despite the trial judge's instruction that there could be but one sole proximate cause of such injury. Second. That after submitting a series of issues presenting the truck driver's sudden emergency doctrine defense, the trial judge over the objections of the plaintiffs submitted shades and variations of the same basic issue in two other separate special issues. Third. That submission of Special Issues 10, 11 and 12 embracing the sudden emergency defense and Special Issues 13, 14 and 15 tended to overly emphasize and give undue prominence to the defensive theory and the facts thereof con-

stituting a defense to plaintiffs' cause of action.*

■ The appellants' first contention under points 1 and 2 is that answers to Special Issues 12, 13 and 15 evidenced a form of jury misconduct because the trial judge specifically instructed the jury that there can be but one sole proximate cause of injury and the jury misunderstood, overlooked or ignored the instruction and by it's answers found three separate sole proximate causes of the injury in suit. Although the answers of the jury might be characterized as jury misconduct, it does not appear to be of such a nature as to require a reversal when the entire record is examined. See Texas Rules of Civil Procedure, rule 327. The jury answers in this respect are not the basis of the judgment the trial court rendered. This is made apparent in the discussion of the next two phases of the appellants' complaint.

With reference to the second basis of reversal urged in appellants' statement and argument under the first two points, their objection to submission of Special Issues 13, 14 and 15 appear to have been well taken. Such issues are shades and variations of Issues 10, 11 and 12, embracing the sudden emergency defense. The excerpt from

---

* The several special issues mentioned in this paragraph, the jury's answers and special instructions connected therewith are as follows:

"SPECIAL ISSUE NO. 10

Do you find from a preponderance of the evidence that on the occasion in question Billy Jeff Robins was acting under an emergency?

In connection with the foregoing special issue, you are instructed that 'EMERGENCY' means a condition arising suddenly and unexpectedly, and not proximately caused by any negligent act or omissions, if any, of Billy Jeff Robins which called for immediate action on Billy Jeff Robins' part without time for deliberation.

Answer 'Yes' or 'No'.
Answer: *Yes*

If you have answered the preceding special issue 'Yes', then answer the following special issue; otherwise, do not answer it.

"SPECIAL ISSUE NO. 11

Do you find from a preponderance of the evidence that after such emergency, if any, arose, Billy Jeff Robins did what a reasonably prudent person in the exercise of ordinary care would have done under the same or similar circumstances?

Answer 'yes' or 'no.'
Answer: *Yes*

If you have answered the preceding special issue 'Yes,' then answer the following special issue; otherwise, do not answer it.

"SPECIAL ISSUE NO. 12

Do you find from a preponderance of the evidence that such emergency, if any, was not the sole proximate cause of the occurrence in question?

Answer 'It was the sole proximate cause' or 'It was not the sole proximate cause.'

Answer: *It was the sole proximate cause.*

"SPECIAL ISSUE NO. 13

Do you find from a preponderance of the evidence that the manner in which traffic operated and maneuvered ahead of Billy Jeff Robins at the time and on the occasion in question was not the sole proximate cause of the accident in question?

Answer 'It was the sole proximate cause' or 'It was not the sole proximate cause.'

Answer: *It was the sole proximate cause.*

"SPECIAL ISSUE NO. 14

Do you find from a preponderance of the evidence that the traffic ahead of Billy Jeff Robins made a reduction in speed immediately before the accident in question?

Answer 'Yes' or 'No'.
Answer: *Yes*

"SPECIAL ISSUE NO. 15

Do you find from a preponderance of the evidence that the manner in which traffic ahead of Billy Jeff Robins made a reduction in speed at the time and on the occasion in question, if you have so found in answer to the preceding special issue, was not the sole proximate cause of the accident in question?

Answer 'It was the sole proximate cause' or 'It was not the sole proximate cause.'

Answer: *It was the sole proximate cause.*

the defendants' answer next quoted clearly shows the relationship of the issues.

"B. That the sole proximate cause of the accident was the manner in which traffic immediately ahead of Billy Jeff Robins maneuvered and/or made a sudden reduction in speed.

"C. That the maneuvering and/or sudden reduction in speed on the part of traffic immediately ahead of Billy Jeff Robins caused him to be faced with a sudden emergency which called for immediate action on his part with no time for deliberation. That after the emergency arose, Billy Jeff Robins did what an ordinarily prudent person would have done under the same or similar circumstances."

The very facts inquired about in Special Issues 13 and 14 are the same facts the appellees, as defendants, pled to raise the defense of sudden emergency which was submitted in Special Issues 10 and 11. However, because of the jury's verdict on other facts in the case, that is to say, because the jury found no issues of primary negligence against the defendants, under Tex.R.Civ.P. 434 the error does not necessitate a reversal, unless for the reasons next to be discussed in considering the third phase of the appellants' complaint.

■ Phase three complains of undue emphasis of the defensive theory and the facts inquired about in Special Issues 10 through 15. Undoubtedly, in slightly different language, the factual substructure of a single theory of defense was submitted in different ways. Such repetition was erroneous. Lone Star Gas Co. v. Ballard, Tex.Civ.App., 138 S.W.2d 633 (Fort Worth 1940 writ ref'd); Attaway v. Fort Worth and Denver Railway Co., Tex.Civ.App., 334 S.W.2d 845 (Forth Worth 1960, writ ref'd n. r. e.); 57 Tex.Jur.2d Trials Section 488 (1964). However, repetition in the submission of issues is not necessarily reversible error. 4 Tex.Jur. Appeal in Error—Civil Section 954 (1959). Hodges, Special

Issue Submission in Texas 133 (1959). The following quotation from Attaway v. Fort Worth and Denver Railway Co., supra, where a similar question was considered is adopted as aptly stating the solution to the last problem presented by points of error 1 and 2.

"When a plaintiff in a suit for damages has not been able to obtain any jury findings upon which a judgment in his behalf for damages in some amount could be entered, and where the special issues submitting said plaintiff's theory of the case and upon which any recovery would necessarily be founded were placed in the charge ahead of issues, if any, which submitted his opponent's defensive theory, it would be difficult, if not impossible, to demonstrate the existence of reversible error under the provisions of Texas Rules of Civil Procedure 434 because the defensive issues were unduly emphasized to the prejudice of the plaintiff. Such difficulty would be enhanced when there is not extrinsic evidence demonstrating that by reason thereof some juror was induced to return a verdict other than that which he would have returned but for the nature of the charge."

The record in this appeal contains nothing from which harm to the plaintiffs due to over emphasis may be inferred. The points are overruled.

Next for consideration is appellants' third point of error.

"POINT 3: The jury verdict and the judgment of the Court should be set aside for the same are grossly inequitable, unjust, and unfair under the evidence presented in such cause. The Court should grant a new trial under the powers of Rule 326, Rules of Civil Procedure, because of the insufficiency and weight of the evidence being contrary to the verdict and the judgment. (Germane to Assignment of Error Nos. 2, 4, 16, 24 and 29)."

The point, as written, requires this Court to examine all evidence in the record as it

bears upon all unfavorable jury responses to the plaintiffs' special issues, as well as to all favorable responses to the defendants' issue. Technically, the broad sweep of the point is objectionable, but, with it, as with the two prior points of error, this Court has not stood on the formalities of briefing.

■ An examination of all evidence has been made in conformity with the guide line of In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1961). The poignant story of tragedy, the untimely death of an innocent 12 year old child—a dainty little girl riding in a funeral procession, is found. A reader is filled with sympathy and confounded at the thought that such calamitous occurrences are the inescapable toll of modern highway transportation, if they are. Surely not, such havoc on the highway must be preventable. However, the parties charged by the aggrieved with negligently causing the fatal collision and those making the charge were before the jury unhindered in presenting their proof. The jury considered the evidentiary facts and found testimony satisfactory to it to support its verdict on the numerous fact issues. This Court has not been shown nor can it point to evidence or circumstances that demonstrate that the jury's verdict was against the overwhelming weight and preponderance of the evidence on the numerous issues supporting the judgment rendered. Appellants' point three must be overruled.

■ The following excerpt from the appellants' brief explains the position of the appellees with reference to the trial judge's exclusion of certain testimony from consideration by the jury.

"* * * [A]ttorneys for the appellants attempted to call as a witness, Mrs. Ted Milkey, at which time the attorneys for the Appellees requested to take the witness on voir dire in chambers pursuant to a Motion in Limine which they had previously filed. Out of the presence of the hearing of the jury it was determined that the attorneys for the Appellants desired to interrogate Mrs. Milkey for the purpose of showing that she had a claim against the Defendants for injuries which she sustained in the same accident, and that she had been paid a specified amount for that claim. It was not the intention of the attorneys for the Appellants to question her regarding a compromise or settlement; all they wished to learn from the witness was whether or not she had a claim against the same Defendants growing out of the same accident, whether she was paid for such claim, and, if so, the amount of such payment.

"The attorneys for the Appellees had previously filed a Motion in Limine for the purpose of objecting to the asking of these questions of the witness by the attorneys for the Appellants, even though the attorneys for the Appellants desired to ask such questions for the sole purpose of showing that there was an admission of liability on the part of the Defendants. * * *".

The truck that struck the station wagon in which Marsha Lynn Otwell was fatally injured also struck a second automobile driven by Mrs. Lucy Milkey. Mrs. Milkey and her husband in a separate action sued the appellants here for damages in excess of $113,000.00. This separate suit ended in a compromise settlement agreement. The Milkeys were paid $36,537.63. The agreement contained this language, to-wit:

"That there is a bona fide controversy between Plaintiffs and Defendants, and the extent of the damages of said Plaintiffs * * * and that in order to avoid the uncertainty of further litigation * * * the parties to said suit do hereby agree that said suit and all controversies and issues by the parties growing out of the injuries to Lucy Milkey and the alleged damages be fully compromised and be settled for the sum of $36,537.63.

\*   \*   \*   \*   \*   \*

It is further stipulated that only the consideration herein stated has been paid or agreed to be paid for this release and agreement, and it is further understood by all parties hereto that this settlement is the compromise of doubtful and disputed claim, and that this payment is not to be construed as an admission of liability on the part of C. S. Scott Truck Line, C. S. Scott, individually d/b/a C. S. Scott Truck Lines, Billy Jeff Robins, and Western Casualty & Surety Company \*   \*   \*"

Proof before the jury of this compromise settlement was inadmissible. Hyde v. Marks, Tex.Civ.App., 138 S.W.2d 619 (Dismissed Judgment Correct 1940), Vol. 27 Texas Law Review 555, Skyline Cab Company et al. v. Bradley et al., 325 S.W.2d 176 (Ref. N.R.E. 1955); City of Coral Gables v. Jordan (Fla.App.1966) 186 So. 2d 60; Jordan v. City of Coral Gables (Fla. 1966) 191 So.2d 38; Hawthorne v. Eckerson Co. (1935) 2 Cir., 77 F.2d 844, wherein the Court said:

"Settlements have always been looked upon with favor, and courts have deemed it against public policy to subject a person who has compromised a claim to the hazard of having the settlement proved in a subsequent lawsuit by another person asserting a cause of action arising out of the same transaction."

See also Price v. Atchison, Topeka and Santa Fe Railway Company, 1958, 164 Cal. App.2d 400, 330 P.2d 933; Sheets v. Davenport, 181 Neb. 621, 150 N.W.2d 224 (1967); Lewis v. Dixie-Portland Flour Mills, Inc., 6th Cir., 356 F.2d 54 (1966). For comprehensive discussion 20 A.L.R.2d 304. It is well to point out also that the collision between the truck and the Otwell station wagon and the collision between the truck and the Milkey automobile are not identical occurrences. Separate instrumentalities are involved. In a collision between several vehicles as shown here, the operator of one might in justice concede negligence with respect to damages to one vehicle, its driver or occupant, and in good faith deny liability to another because the facts, circumstances and actions of the drivers and their vehicles could very well support liability in one instance and negate it in another. Appellants' point four must be overruled. The judgment of the trial court is affirmed.